THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v* DARRYL BELL *et al.*, Defendants-Appellants.

First District (5th Division)   Nos. 81—929, 81—931, 81—953, 81—1110 cons.

Opinion filed March 25, 1983.

James J. Doherty, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellants Darryl Bell, William Martin, and Kevin Mitchell.

Steven Clark and Gordon Berry, both of State Appellate Defender's Office, of Chicago, for appellant Vincent Bevley.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, David A. Shapiro, Anthony John Calabrese, Michael J. Kelly, and Peter Delonges, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

Defendants Darryl Bell, Kevin Mitchell, William Martin, and Vincent Bevley were convicted, after trial by jury, of murder (one count each), attempted murder (five counts each), and armed violence based on attempted murder (five counts each). (See Ill. Rev. Stat. 1979, ch. 38, pars. 9—1(a), 8—4(a), and 33A—2.) No issue is raised on the sentences imposed by the trial court, but the defendants assert that their

convictions should be reversed for the following reasons:

1. The evidence is not sufficient to prove that (a) Mitchell and Bell intended to kill the attempted-murder complainants, or (b) that Bevley and Martin are accountable for the conduct of their codefendants.

2. The court erred when it declined to answer a question submitted by the jury during its deliberations.

3. A prosecutor made improper comments during argument.

4. It was improper to enter concurrent convictions on the attempted-murder and armed-violence verdicts.

We disagree with the first three contentions, and accordingly, we affirm in part and vacate in part. Before stating the evidence which is material to our decision, it is important to clarify our role in reviewing the adequacy of evidence to support criminal convictions.

"The elementary but crucial difference between burden of proof and scope of review is, of course, a commonplace in the law. The difference is most graphically illustrated in a criminal case. There the prosecution is generally required to prove the elements of the offense beyond a reasonable doubt. But if the correct burden of proof was imposed at the trial, judicial review is generally limited to ascertaining whether the evidence relied upon by the trier of fact was of sufficient quality and substantiality to support the rationality of the judgment. In other words, an appellate court in a criminal case ordinarily does not ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt, but whether the judgment is supported by substantial evidence." *Woodby v. Immigration & Naturalization Service* (1966), 385 U.S. 276, 282, 17 L. Ed. 2d 362, 367, 87 S. Ct. 483, 486; see also *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (holding that when reviewing the sufficiency of evidence to support a State criminal conviction, "the relevant question [under the due process clause of the fourteenth amendment] is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt").

Illinois reviewing courts follow the same approach when evaluating evidence in criminal cases, and where there is sufficient evidence of guilt, if believed by the jury, to prove defendant guilty beyond a reasonable doubt, a conviction will not be reversed. (See *People v. Goodpaster* (1966), 35 Ill. 2d 478, 480.) As the supreme court ex-

plained in *People v. Henderson* (1947), 398 Ill. 348, 353-54,

> "It was for the jury to determine the credibility of the various witnesses and to attach such weight to their testimony as they thought it was entitled to. The jury accepted the testimony of the People as being the correct version of what occurred. The jurors' acceptance of the People's theory leaves nothing for the court to determine except as to whether there is sufficient evidence, if believed to be true, to prove defendant's guilt beyond a reasonable doubt."

■■ Accordingly, we must view the evidence in the light most favorable to the prosecution, and the evidence of guilt cannot be disregarded on review unless it is improbable, inconclusive or contrary to human experience. (See *People v. Stevenson* (1962), 25 Ill. 2d 361, 364-65; *People v. Ellis* (1978), 74 Ill. 2d 489, 496.) Also, in light of the legal principles mentioned above, we need not set forth a comprehensive abstract of the testimony, and our statement of the material evidence represents the testimony taken in the light most favorable to the prosecution.

On August 29, 1980, there was a backyard party, attended by about 40 young people, at 8856 South Union Street in Chicago. Around midnight, defendant Kevin Mitchell began to repeatedly make unusual gestures which involved crossing his arms over his chest with thumbs up, and then moving clenched fists to his forehead. Andre Long testified that some of the other young men at the party reacted to these gestures by talking among themselves. According to Long, he asked Mitchell to leave the party because he was afraid there was going to be a fight between Mitchell and some of the others at the party.

Mark Petties testified that he and Chappelle Crump escorted Mitchell to the front of the house. They were followed by 10 unidentified young men. Andre Long testified that these were the same gentlemen who began to talk among themselves when they saw Mitchell making his unusual gestures.

When these two groups got to the front of the house, several of the unidentified young men began to beat Mitchell. The beating was eventually stopped, and Mitchell, bloodied, drove off in a blue car. Two or three people left with Mitchell, and one of the other occupants was identified by Derrick Sims as defendant William Martin.

About 15 minutes later, Mitchell drove back to 8856 South Union, stopped, got out of his car, fired several shots at the house, and drove away. Nobody was injured during this incident. And although there were two or three passengers in Mitchell's car, they could not be iden-

tified.

The guests at the party began to go home after the first shooting, and about 15 people were standing near the front of the house when, 20 minutes later, Mitchell approached the house driving a white car. The car stopped in front of the house, and Mitchell fired several shots out of the window with a .38-caliber handgun, while one of his passengers, Darryl Bell, fired a sawed-off .22-caliber rifle. Up to six shots were fired, and Ronald Yates, who was standing in front of the house, was killed by a .38-caliber bullet in the forehead.

Mark Petties, Carlos Tyree, Chappelle Crump, Andre Long, and Derrick Sims were in front of or near the front of the house at 8856 South Union during the second shooting incident. These witnesses testified that Mitchell and Bell fired at the house, and the witnesses said they ducked when the volley of gunfire began.

Vincent Bevley was identified as sitting behind Mitchell during the second shooting incident, and William Martin was identified as sitting on the passenger side of the backseat. A nearby police car responded to the gunfire, and Officer George Bryja testified that defendant Bevley threw the sawed-off rifle out the car window during the chase. Plus, after the defendants were arrested, a .38-caliber revolver was discovered under the rear seat near where Martin was sitting.

Based on this evidence, the jury found the defendants guilty of murdering Ronald Yates, and of attempting to murder Mark Petties, Carlos Tyree, Chappelle Crump, Andre Long, and Derrick Sims. The jury also found the defendants guilty of armed violence based on the attempted-murder findings.

The first issue on appeal is whether the evidence is sufficient to support finding that the shooters, Mitchell and Bell, intended to kill Petties, Tyree, Crump, Long and Sims.

Intent to kill is not necessary for a murder conviction, and it is sufficient to sustain such a charge if the defendant knew his acts "create[d] a strong probability of death or great bodily harm." (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(a)(2).) But such knowledge is not sufficient to support an attempted-murder conviction (see *People v. Trinkle* (1977), 68 Ill. 2d 198, 201-02), and "to convict for attempted murder nothing less than a criminal intent to kill must be shown." *People v. Harris* (1978), 72 Ill. 2d 16, 27.

> "The gist or essence of the crime of assault with intent to murder is a specific intent to take life and such intent must be proved as charged beyond a reasonable doubt. However, since intent is a state of mind, and, if not admitted, can be shown

only by surrounding circumstances, it has come to be recognized that an intent to take life may be inferred from the character of the assault, the use of a deadly weapon and other circumstances." *People v. Coolidge* (1963), 26 Ill. 2d 533, 536; accord, *People v. Koshiol* (1970), 45 Ill. 2d 573, 578; *People v. Wilson* (1930), 342 Ill. 358, 366; see also LaFave & Scott, Criminal Law sec. 28, at 203 (1972); Ill. Ann. Stat., ch. 38, par. 4—3, Committee Comments, at 256 (Smith-Hurd 1972).

The courts have sometimes stated that there is a "presumption" of intent to kill "[w]here one voluntarily and willfully does an act, the natural tendency of which is to destroy another's life." (*People v. Shields* (1955), 6 Ill. 2d 200, 206; see also *People v. Marrow* (1949), 403 Ill. 69, 74.) But, "If this is taken as a rule of substantive law, it is apparent that it would in effect destroy the concept of intention and replace it entirely with negligence. This is because the defendant would be held to have intended whatever a reasonable man would have foreseen as probable." LaFave & Scott, Criminal Law sec. 28, at 203 (1972).

Properly understood, however, this so-called "presumption" merely means it may be permissible, depending upon the circumstances of the particular case, for a trier of fact to *infer* intent to kill. (LaFave & Scott, Criminal Law sec. 28, at 203 (1972); see also *People v. Shields* (1955), 6 Ill. 2d 200, 205.) As the court explained in *Crosby v. People* (1891), 137 Ill. 325, 337, "The intent with which the act was done is a question of fact, either to be shown by the declaration of the party, or to be inferred from the character, manner and circumstances of the assault." For example, in *People v. Gonzales* (1968), 40 Ill. 2d 233, the defendant drove up in a car and fired a shotgun at a group of men standing in front of a tavern. Affirming defendant's conviction for attempted murder, the supreme court stated:

"It is not necessary to show that he formed an intent to kill any particular person since there can be no question but that the natural tendency of this act would be to destroy another's life. In a situation such as this the criminal intent to murder may be implied from the character of the act." *People v. Gonzales* (1968), 40 Ill. 2d 233, 241-42.

■ The evidence in the present case, taken with credibility questions resolved in favor of the State, shows that Kevin Mitchell and Darryl Bell fired up to six shots at a house while Petties, Tyree, Crump, Long, Sims and the decedent stood in front of or near the front of the building. Mitchell and Bell fired deadly weapons from close range, and the natural tendency of these acts was to kill those

who, like Ronald Yates, stood in the target area. The circumstances of the attack made by Mitchell and Bell persuades us the evidence was sufficient for a rational trier of fact to find, beyond a reasonable doubt, that Mitchell and Bell acted with intent to kill Petties, Tyree, Crump, Long and Sims.

Next, Bevley and Martin argue that the evidence is not sufficient to support finding them accountable, as accomplices, for the actions of their codefendants.

Among other specified situations, a person is legally accountable for the conduct of another if, with intent to promote or facilitate the commission of an offense, he agrees to aid in the commission of the offense. (See Ill. Rev. Stat. 1979, ch. 38, par. 5—2(c).) Although "mere presence at the commission of an alleged offense, without any affirmative act of assisting, abetting or encouraging the commission of the act, is not sufficient to make one a principal in the commission of the offense" (*People v. Shields* (1955), 6 Ill. 2d 200, 207), "[t]he encouragement may come long before the time the crime was committed ***. It is sufficient encouragement that the accomplice is standing by at the scene of the crime ready to give some aid if needed, although in such a case it is necessary that the principal actually be aware of the accomplice's intentions." LaFave & Scott, Criminal Law sec. 64, at 503 (1972); accord, *People v. Rudecki* (1923), 309 Ill. 125, 130-31.

As with any other fact-to-be-proved, circumstantial evidence may establish that there was an agreement or understanding, between principal and accomplice, that the accomplice would stand by at the scene of a crime and assist if necessary. "Circumstances may show that there is in such case a common design to which all assented, and where that is so it is not necessary that each one shall take an active part in the commission of the crime." *People v. Powers* (1920), 293 Ill. 600, 603.

> "While it is true that mere presence or negative acquiescence is not enough to constitute a person a principal, one may aid and abet without actively participating in the overt act and if the proof shows that a person was present at the commission of the crime without disapproving or opposing it, it is competent for the trier of fact to consider this conduct in connection with other circumstances and thereby reach a conclusion that such person assented to the commission of the crime, lent to it his countenance and approval and was thereby aiding and abetting the crime." *People v. Cole* (1964), 30 Ill. 2d 375, 379; see also *People v. Cione* (1920), 293 Ill. 321, 331.

In the present case, Mitchell and Bell, the triggermen, went to 8856 South Union armed with deadly weapons, and they were clearly seeking revenge for what had happened to Mitchell earlier in the evening. Bevley and Martin argue that the evidence fails to show that they were anything more than innocent spectators to the criminal conduct of their fellow automobile occupants. But common sense tells us that Mitchell and Bell would not have brought Bevley and Martin along on their deadly mission unless these self-professed "spectators" had agreed that they would assist the triggermen if necessary.

It isn't likely that Mitchell and Bell decided to bring "innocent spectators" with them to insure that there would be eyewitnesses to their crimes. Moreover, the evidence, taken in the light most favorable to the prosecution, shows that Bevley and Martin did assist when it became necessary, by disposing of the guns while the police pursued them.

█ The circumstances of this case are sufficient for a rational trier of fact to conclude, beyond a reasonable doubt, that:

(1) when Bevley and Martin accompanied Mitchell and Bell in the white car, they agreed that, if necessary, they would aid their codefendants commit acts which "create[d] a strong probability of death or great bodily harm" (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(a)(2));

(2) these "spectators" intended to facilitate commission of the acts which resulted in the death of Ronald Yates; and

(3) both Bevley and Martin knew there was a strong probability that these acts would result in death or great bodily harm. Consequently, there was sufficient evidence to find them accountable for the murder of Ronald Yates.

A similar question is whether the evidence was sufficient to hold Bevley and Martin accountable for attempted murder.

An accomplice can be held accountable for murder even in the absence of intent to kill (see LaFave & Scott, Criminal Law sec. 64, at 507 (1972); Ill. Rev. Stat. 1979, ch. 38, pars. 9—1(a), 5—2(c)), but, as we noted earlier, principals (such as Mitchell and Bell) are not guilty of attempted murder unless they acted with intent to kill.

We agree that the evidence in the present case is not sufficient to justify concluding that Bevley and Martin *intended* for Mitchell and Bell to kill Pettie, Tyree, Crump, Long and Sims. In many jurisdictions this would absolve them from legal liability as accomplices for attempted murder, because "[t]he prevailing view is that the accomplice must also have the mental state required for the crime of which he is to be convicted on an accomplice theory." (LaFave & Scott, Criminal Law sec. 64, at 506 (1972).) "[F]or example *** one may not

be held as an accomplice to the crime of assault with intent to kill if that intent was not shared by the accomplice." LaFave & Scott, Criminal Law sec. 64, at 507 (1972); see also Ill. Ann. Stat., ch. 38, par. 5—2, Committee Comments, at 288 (Smith-Hurd 1972) (stating that liability under section 5—2(c) "requires proof of an 'intent to promote or facilitate *** commission' of the substantive offense").

Nevertheless, in *People v. Kessler* (1974), 57 Ill. 2d 493, the supreme court construed section 5—2 as providing that an accomplice can be held accountable for attempted murder even in the absence of intent to kill. In that case, a defendant who aided and abetted the burglary of a tavern, by driving the getaway car, was held accountable for two attempted murders committed by the principals when they were unexpectedly discovered inside the tavern. The appellate court reversed the defendant's attempted-murder convictions because there was no proof that he intended for his companions to kill the persons who unexpectedly discovered them during the burglary. *People v. Kessler* (1973), 11 Ill. App. 3d 321, 325-26.

The supreme court reversed the appellate court and affirmed Kessler's attempted-murder convictions, holding that section 5—2 incorporated the "common design rule." (57 Ill. 2d 493, 497-98.) Under the "common design rule," "where defendants have a common design to do an unlawful act, then whatever act any one of them does in furtherance of the common design is the act of all and all are equally guilty of whatever crime is committed." (*People v. Armstrong* (1969), 41 Ill. 2d 390, 399; accord, *People v. Tate* (1976), 63 Ill. 2d 105, 109-10.) Since Kessler was legally accountable for the crime of burglary, as an accomplice, the common design rule meant that he was also accountable for the attempted murders committed during the burglary by his cohorts. 57 Ill. 2d 493, 499.

In the present case, the jury was instructed to apply the principles of accountability set forth in section 5—2(c), and defendant Martin argues that his conviction cannot be affirmed based on the common law common design rule. However, in *Kessler* the supreme court read the common design rule into section 5—2 by holding that "the statute, *as it reads*, means that where one aids another in the planning or commission of an offense, he is legally accountable for the conduct of the person he aids; and that the word 'conduct' encompasses any criminal act done in furtherance of the planned and intended act." (Emphasis added.) 57 Ill. 2d 493, 497.

■ Applying these legal principles to the facts of the present case, Bevley and Martin are accountable for the attempted murders committed by Mitchell and Bell because the evidence was sufficient to

support finding that they all had a common design to perform the unlawful acts which resulted in the murder of Ronald Yates.

Another issue raised by Bevley and Martin is that the trial court erred in declining to answer a question from the jurors. During their deliberations, the jurors sent a note to the trial court asking, "Does any testimony place V. Bevley or W. Martin in the blue car at the time of the first shooting?" According to Bevley and Martin, the court committed reversible error by not informing the jury there was no testimony that Bevley and Martin accompanied Mitchell during the first shooting.

Trial courts in Illinois have discretion to permit or refuse a request from a jury that it be permitted to review or hear a transcript of trial testimony. (*People v. Pierce* (1974), 56 Ill. 2d 361, 364; *People v. Queen* (1974), 56 Ill. 2d 560, 565; *People v. Autman* (1974), 58 Ill. 2d 171, 176.) But the trial court does not have authority to answer a question from the jury which calls for the court to give a conclusion based on its evaluation of the evidence. *People v. Williams* (1975), 60 Ill. 2d 1, 13.

■ The line drawn by the supreme court in these cases gives trial courts discretion to permit a jury to hear a replay of certain testimony, but prohibits the court from usurping the jury's function as trier of fact. Even assuming that the trial court could have answered the jury's inquiry in the present case without the court abandoning its role as a neutral referee, we find that the court did not abuse its discretion.

In its discussion with counsel, the trial court acknowledged that there was no direct evidence identifying Bevley and Martin as occupants of the blue car during the first shooting incident. But the court also realized that there was substantial circumstantial evidence placing them in the car. The court therefore concluded that telling the jury there was no such "testimony" might amount to judicial oversteering, usurping the jury's function as trier of fact. The court's decision was within the range of reason, and it did not constitute an abuse of discretion.

The next issue concerns prosecutorial argument. According to the defendants, the prosecutors (a) violated an *in limine* order, (b) gave unsworn testimony during argument; (c) made improper rebuttal argument; (d) misstated the law of accountability; and (e) improperly belittled the prosecution's burden of proof.

The prosecution had intended to present testimony that the unusual hand gestures made by Kevin Mitchell signified membership in a particular street gang—the Disciples. Through a motion *in limine* the

defense sought to preclude any mention of the gestures themselves and of their significance. The court's *in limine* order prohibited the prosecution from presenting evidence that the gestures signified affiliation with the Disciples, but the court permitted introduction of eyewitness testimony and demonstrations concerning the gestures themselves, as well as testimony concerning the reaction to the gestures from other partygoers.

Mitchell's attorney argued that there was a substantial likelihood the jury would conclude, even without explanatory testimony, that the gestures signified membership in a street gang. Counsel therefore concluded that this would violate the *in limine* order prohibiting introduction of testimony that the gestures signified affiliation with the Disciples. The court emphatically replied, "No, No, No, that wouldn't violate it, what they figure out isn't going to violate any ruling."

Then, during rebuttal argument, a prosecutor made the following comments:

> "[Y]ou heard that Kevin [Mitchell] was making these hand motions. Don't you think those meant something?
>
> * * *
>
> Don't you think that meant something?
>
> * * *
>
> The people that these were made to got angry he was making motions *** and a fight resulted therefrom. This is Cub Scouts [indicating], this is Boy Scouts [indicating]. Don't you think this nonsense means something too. [Indicating.] *** Don't you think it indicates why somebody was kicked out of the party? They were telling the people who they were."

The defendants argue that these comments violated the court's *in limine* order, and constituted unsworn testimony, as well as improper rebuttal. However,

> "[I]n the absence of *express prohibition* every fact which, in no illegal manner, comes to the knowledge of the jury during the progress of a trial, and which may reasonably influence their judgment is a proper subject of comment in argument." (Emphasis added.) *People v. Williams* (1968), 40 Ill. 2d 522, 529-30; see also *People v. Wright* (1974), 56 Ill. 2d 523, 531 ("The initial test which must always be considered is whether the argument complained of is based upon relevant evidence in the record or legitimate inferences deducible therefrom").

The key question in the present case is whether the trial court's *in limine* order expressly prohibited the prosecution from arguing that the gestures made by Mitchell signified gang membership. As the

supreme court noted in *Reidelberger v. Highland Body Shop, Inc.* (1981), 83 Ill. 2d 545, 550, "[I]t is imperative that the *in limine* order be clear and that all parties concerned have an accurate understanding of its limitations."

■ The *in limine* order in the present case prohibited the prosecution from adducing evidence that Mitchell's gestures identified him as a member of a particular gang—the Disciples. But the gestures themselves were in evidence, and the trial court contemplated that the jurors could, and almost certainly would, infer that the gestures signified membership in a street gang. The court's order may not have been as precise as it could have been, but the gestures themselves, as well as the reactions they caused, were properly in evidence, and in light of the court's statement that "what they figure out isn't going to violate any ruling," we cannot conclude that the prosecution violated an express prohibition by presenting argument implying the gang-related significance of the gestures.

Furthermore, these comments constituted reasonable inferences based on the evidence, and they did not amount to unsworn testimony. A similar comment—that this case was reminiscent of a 1920's gangland slaying—also constituted a reasonable inference based on the evidence.

We agree, after examining the record, that these comments constituted improper rebuttal argument because they were new arguments rather than responses to defense arguments (see *People v. Bundy* (1920), 295 Ill. 322, 330-31), but we do not think the jury could possibly have failed to realize the significance of Mitchell's gestures. The error is not reversible because there is no reasonable likelihood that it could have affected the results of the trial. See *People v. Kirkwood* (1959), 17 Ill. 2d 23, 33; *People v. Allen* (1959), 17 Ill. 2d 55, 63.

Defendants Bell, Bevley, and Martin argue that it was improper for the prosecutor to state, in the comments quoted above, "They were telling the people who they were." However, there was no objection made to this comment during trial, and the right to assert that this comment was improper has been waived. See *People v. Carlson* (1980), 79 Ill. 2d 564, 577; *People v. Dukett* (1974), 56 Ill. 2d 432, 442; *People v. McCurrie* (1929), 337 Ill. 290, 296.

Bevley and Martin also argue the prosecutor committed reversible error by stating, over objection, that "mere presence at the scene is enough as the instructions will tell you if you've got the intent to aid or abet or you even attempt to aid or abet."

■ As we noted above, presence at the scene of a crime, plus in-

tent to aid if needed, is sufficient to call for accomplice liability if the intent to aid was communicated to the principal. The prosecutor's comment was not as precisely phrased as it should have been, but (1) the jury was properly instructed, and (2) the comment itself expressly referred the jurors to the court's instructions of law. Also, the error was not emphasized or repeated, and we are convinced that there is no reasonable likelihood that the misstatement could have affected the results of the trial.

The last contention concerning prosecution argument concerns a comment in which the prosecutor told the jurors that the burden of proving guilt beyond a reasonable doubt is "the same burden, and the same presumption [of innocence] that put about twelve thousand people in the penitentiary, the same one."

Similar comments have been held improper on the grounds that they "had the effect of lessening the importance of the State's burden of proof by implying that reasonable doubt was merely a pro-forma or minor detail." *People v. Martinez* (1979), 76 Ill. App. 3d 280, 285; accord, *People v. Frazier* (1982), 107 Ill. App. 3d 1096, 1102.

■■ Assuming that the comment in question was improper, the error was not reversible because the jury was properly instructed on the prosecution's burden of proof, and the comment did not negate these instructions or shift the burden of proof to the defendants. (Compare *People v. Weinstein* (1966), 35 Ill. 2d 467, 469-70.) It must be presumed that the jurors followed the court's instructions, and we conclude there is no reasonable likelihood that the results of the trial would have differed in the absence of the comment in question.

Finally, the defendants argue the trial court erred by imposing concurrent sentences for each defendant on the five attempted-murder counts, and the five counts of armed violence based on attempted murder.

The supreme court has held that, because the legislature did not clearly manifest a contrary intent, the armed-violence statute (Ill. Rev. Stat. 1979, ch. 38, pars. 33A—1 through 33A—3) must be construed as providing "that multiple convictions for both armed violence and the underlying felony cannot stand where a single physical act is the basis for both charges." *People v. Donaldson* (1982), 91 Ill. 2d 164, 170; accord, *People v. Simmons* (1982), 93 Ill. 2d 94, 97.

■■ The evidence in the present case shows that up to six shots were fired during the second shooting. One shot was the basis for convicting each defendant of murder, and the other shots provided the basis for finding each defendant guilty of five counts of attempted

murder and five counts of armed violence based on the underlying felony of attempted murder. But each armed-violence conviction was based on the same discrete physical act as the corresponding attempted-murder conviction. Therefore, under *Donaldson*, the underlying attempted-murder convictions should have been vacated.

We note the prosecution argues on appeal that the shots fired by Mitchell during the initial shooting incident constitute separate offenses justifying additional convictions for each defendant. However, the case was not tried on this theory, and fundamental requirements of due process mandate that the defendants' convictions cannot be affirmed based on crimes for which they were not tried.

Based on all the foregoing reasons, we vacate the defendants' convictions for attempted murder, and we affirm the rest of the trial court's judgments.

Affirmed in part; vacated in part.

WILSON, P.J., and MEJDA, J., concur.