THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ERWIN FEYRER, Defendant-Appellant.

First District (3rd Division)   No. 1—90—2354

Opinion filed December 30, 1994.—Rehearing denied March 8, 1995.

Linda Eigner, of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Randall E. Roberts, and Eileen M. O'Neill, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Defendant, Erwin Feyrer, was found guilty on one count of first degree murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)) and two

counts of attempted murder (Ill. Rev. Stat. 1987, ch. 38, pars. 8—4(a), 9—1(a)). The court sentenced him to 35 years' imprisonment for murder, and two concurrent terms of 20 years each for attempt murder. We affirm.

The following issues are for review: (1) whether the trial court erred in instructing the jury on the State's burden of proof regarding defendant's use of force and the elements of murder, and on the specific intent element of attempted murder; (2) whether defendant was proven guilty of murder and attempted murder beyond a reasonable doubt; (3) in the alternative, if this court finds that defendant was proved guilty of murder beyond a reasonable doubt, whether his murder conviction must be reduced to second degree murder because he proved beyond a reasonable doubt that he believed that he was justified in defending himself; (4) whether the statutory provision on murder is unconstitutional; and (5) whether the trial court abused its discretion in sentencing defendant.

On October 21, 1988, a group of young men went to River Park, located at 5049 N. Albany in Chicago, Illinois, to play soccer and to talk. Two of the young men in the group were wearing dark blue and gold Roosevelt High School soccer team uniforms. They had been sitting on a park bench for a few minutes when one of them said: "Be cool." They all then looked up and saw two men, later identified as defendant and James Maris, standing several feet away from them under a streetlight.

The men standing under the streetlight were facing the group. Defendant greeted the group. Both of the men took guns out of their coats and began shooting at the young men sitting on the bench. The young men sitting on the park bench started running in an effort to avoid being shot. Alfas Younan was shot in the back of his left shoulder. Sarkis Jado was shot in the back of his left hip and left wrist. Carlos Diaz was wounded and Fabian Diaz, Carlos' brother, died from multiple gunshot wounds, including wounds to the right side of the back of his head and on the back of his right knee.

On October 23, 1988, Chicago police officer Edward Wiora received information that defendant was involved in the River Park shooting. Officer Wiora entered defendant's name into a law enforcement data base and discovered that there was an outstanding warrant for his arrest for telephone harassment. Officer Wiora went to defendant's house and arrested him pursuant to the warrant. Defendant was later questioned about the murder of Fabian Diaz. Defendant told the police that he was at a party from 8:30 p.m. until 3 a.m. on the night of the shooting. Defendant was then released on an individual recognizance bond.

On October 30, 1988, Chicago police officers Thomas Czapiewski and Nancy Hartigan received a message that someone resembling a suspect in the River Park shooting was in a local "7-Eleven" store parking lot. Officers Czapiewski and Hartigan went to that location where they saw defendant. The police got out of their squad car and defendant walked toward the car. Defendant told them that he wanted to talk to them about the shooting in River Park and he admitted that he was there. Officer Hartigan then arrested defendant and advised him of his rights. Defendant subsequently told Officer Hartigan that he and "Andy" had gone to the park to buy some dope but that Andy pulled out his gun and started shooting.

Later, defendant was interviewed by Chicago Detective John Leonard. Defendant told Detective Leonard that he and Andy left a park known as "Teenage Wasteland" to go to River Park to purchase drugs and that as they approached a group of young men sitting on a bench in River Park, Andy pulled out a gun and began shooting. Defendant told Detective Leonard that Andy used a .38-caliber gun. Defendant and Maris were charged with first degree murder (Ill. Rev. Stat. 1987, ch. 38, par. 9—1(a)), attempted murder (Ill. Rev. Stat. 1987, ch. 38, pars. 8—4(a), 9—1(a)), armed violence (Ill. Rev. Stat. 1987, ch. 38, par. 33A—2), and aggravated battery (Ill. Rev. Stat. 1987, ch. 38, par. 12—4). Defendant and Maris were tried in a joint trial; however, defendant was tried by a jury and Maris had a bench trial.

Defendant testified that he left "Teenage Wasteland" around 9 p.m. with Andy Maylaras. Defendant further testified that he and Maylaras walked to River Park, where they saw a group of young people sitting on a bench. Defendant testified that the people sitting on the bench stood up and looked at him. Defendant testified that he then heard a gunshot and that he responded by firing a gun at the group. Defendant further testified that after he ran out of bullets, he fled the scene, threw his gun in the river and then went to a party where he stayed until 3:30 a.m.

Defendant's cellmate, Jesse Smith, testified that defendant confessed to him that he committed the crime. Smith stated that defendant told him that Maris was chased by a group of boys, and that after Maris told defendant about being chased, the two men found some guns and went back to the park where he had been pursued. Defendant testified that upon arriving at the park, they hid behind some bushes. Smith further testified that defendant told him that he and Maris then came out from behind the bushes near a group of young men sitting in the park and that he began to shoot at their feet. Defendant told Smith that when the young men in the park

began to run, they aimed the guns at their bodies. According to Smith, defendant told him that he and Maris then threw the guns in a garbage can in an alley, walked in separate directions and returned to a party where defendant had been previously.

Chicago police officer Daniel Noon, a gang crimes specialist, testified that River Park was considered part of the "territory" of the Latin Kings street gang and that the Latin Kings were enemies of the Simon City Royals street gang. Defendant and Maris were members of the Simon City Royals. Noon testified that the high school soccer uniform worn by Fabian Diaz and some of the other boys sitting on the bench was dark blue and gold, colors associated with the Latin Kings.

Defendant was found guilty of the murder of Fabian Diaz and the attempted first degree murders of Alfas Younan and Sarkis Jado. Maris was acquitted. Defendant now appeals.

First, defendant contends (1) that his murder conviction must be reversed because the trial court violated his right to due process by failing to instruct the jury that the State had the burden of proving beyond a reasonable doubt with respect to the murder charge that his use of force was not justified; and (2) that his conviction for attempted murder must be reversed because the jury instructions allowed the jury to find him guilty of attempted murder whether or not he had a specific intent to kill.

The State maintains that defendant has waived review of this issue (1) by not tendering Illinois Pattern Jury Instructions, Criminal, No. 7.06A (2d ed. Supp. 1987) (hereinafter IPI Criminal 2d) or a modified version of IPI Criminal 2d No. 6.07, which provides that the State must prove beyond a reasonable doubt that defendant was not justified in using the force which he used; and (2) by failing to assert these alleged instructional errors in his post-trial motion. In the alternative, if this court holds that the jury instructions were defective, the State contends that the jury was adequately instructed on the elements of murder and attempted murder and the State's burden of proof in demonstrating that defendant's actions were not justified and that even if the jury received improper instructions, any error was harmless because the evidence against defendant was so overwhelming that the result of this trial would not have been different had the jury been given different instructions.

It is well established that the failure to object at trial to an asserted error in jury instructions waives that issue on appeal. (*People v. Berry* (1984), 99 Ill. 2d 499, 503, 460 N.E.2d 742, 743; see also *People v. Enoch* (1988), 122 Ill. App. 3d 176, 186-88, 522 N.E.2d 1124, 1129-30.) The record shows that defendant failed to object to the instructions on first degree murder.

■ Defendant, however, contends that the court should review this issue pursuant to the plain error doctrine. Illinois Supreme Court Rule 615(a) provides that plain error which affects a party's substantial rights may be noticed on appeal even though the error was not brought to the attention of the trial court. (134 Ill. 2d R. 615(a).) The criterion for the application of the plain error rule in criminal cases is whether the evidence is closely balanced or the error is of such magnitude that the commission thereof denies the accused a fair trial. (*People v. Young* (1989), 128 Ill. 2d 1, 47, 538 N.E.2d 461, 471.) The plain error doctrine is inapplicable to the present case because the instructions did not constitute an error so grave that defendant was denied a fair trial nor was the evidence closely balanced.

We will, however, review this issue pursuant to Illinois Supreme Court Rule 366(a)(5). (134 Ill. 2d R. 366(a)(5).) Under Rule 366(a)(5), this court may, in the exercise of its responsibility to insure that a cause has a just result, ignore the doctrine of waiver and decide a case on grounds not properly raised or not raised at all by the parties. *People v. Shelton* (1993), 252 Ill. App. 3d 193, 200, 624 N.E.2d 1205, 1209-10.

■ When a defendant raises an affirmative defense such as the justifiable use of force, the State is required to prove the absence of said defense beyond a reasonable doubt. (Ill. Rev. Stat. 1987, ch. 38, pars. 3—2(b), 7—1, 7—14, 9—2(c).) In a jury trial, the jury must be informed of this fact in the instructions on the charged offense. Ill. Rev. Stat. 1987, ch. 38, par. 9—2(c).

The trial court gave the jury the following instruction on self-defense:

> "A person is justified in the use of force when and to the extent that he reasonably believes that such conduct is necessary to defend himself against the imminent use of unlawful force. However, a person is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another."

(See IPI Criminal 2d No. 24—25.06.) Additionally, the trial court issued instructions on the definition of a mitigating factor, including belief in justification:

> "A mitigating factor exists so as to reduce the offense of first degree murder to the lesser offense of second degree murder if at the time of the killing the defendant believes that circumstances exist which would justify the deadly force he uses but his belief that such circumstances exist is unreasonable."

See IPI Criminal 2d No. 7.05A.

The trial court also gave the jury the definitional instruction for murder:

"A person commits the offense of first degree murder when he kills an individual without legal justification if, in performing the acts which cause the death, he intends to kill or do great bodily harm to that individual; or he knows that such acts will cause death to that individual; or he knew that such acts create a strong probability of death or great bodily harm to that individual."

(See IPI Criminal 2d No. 7.01A.) The trial court also instructed the jury on the charge of first degree murder:

"To sustain the charge of first degree murder, the State must prove the following propositions:

First: That the defendant or one for whose conduct he is legally responsible, performed the acts which caused the death of Fabian Diaz; and

Second: That when the defendant, or one for whose conduct he is legally responsible, did so, he intended to kill or do great bodily harm to Fabian Diaz; or he knew that his acts would cause death to Fabian Diaz; or he knew that his acts created a strong probability of death or great bodily harm to Fabian Diaz.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that each one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

See IPI Criminal 2d No. 7.02A.

The trial court gave the jury the following instructions regarding the charge of attempted murder:

"To sustain the charge of attempt, the State must prove the following propositions:

First: That the defendant, or one for whose conduct he is legally responsible, performed an act which constituted a substantial step toward the commission of the offense of first degree murder; and

Second: That the defendant, or one for whose conduct he is legally responsible, did so with intent to commit the offense of first degree murder.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant not guilty."

(See IPI Criminal 2d No. 6.07.) The trial court also tendered IPI Criminal 2d No. 2.03 to the jury, which provides as follows:

"The defendant is presumed to be innocent of the charges against him. This presumption remains with him throughout

every stage of the trial and during your deliberations on the verdict, and is not overcome unless from all the evidence in the case you are convinced beyond a reasonable doubt that defendant is guilty.

The State has the burden of proving the guilt of the defendant beyond a reasonable doubt, and this burden remains on the State throughout the case. The defendant is not required to prove his innocence." IPI Criminal 2d No. 2.03.

■ We hold that the above instructions adequately apprised the jury on the elements of murder and attempted murder, the exception for the use of justified force and the State's burden of proof. The trial court did not commit reversible error by failing to include IPI Criminal 2d No. 7.06A or declining to modify IPI Criminal 2d No. 6.07. Accordingly, defendant's convictions will not be reversed by this court on the basis of defective jury instructions. Next, defendant contends that his convictions for attempted murder were improper because the State failed to prove beyond a reasonable doubt that his use of force was not justified and because the State failed to show beyond a reasonable doubt that he had the specific intent to kill Younan or Jado. Defendant also contends that his murder conviction must be reversed because the State failed to prove beyond a reasonable doubt that his use of force was not justified. In the alternative, if this court finds that defendant was proven guilty beyond a reasonable doubt of first degree murder, defendant contends that his murder conviction must be reduced to second degree murder because he proved that he had a subjective belief that he was justified in defending himself.

■ The relevant inquiry upon review of the sufficiency of the evidence of a defendant's guilt is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that defendant committed the essential elements of the crimes for which he was convicted, beyond a reasonable doubt. (*Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789; *People v. Stuckey* (1992), 231 Ill. App. 3d 550, 566, 596 N.E.2d 646, 657.) A guilty verdict will not be reversed on appeal unless it is inconclusive, improbable, unconvincing, or contrary to human experience. *Stuckey*, 231 Ill. App. 3d at 566, 596 N.E.2d at 657.

■ First, we will address defendant's allegations of error regarding the sufficiency of the evidence of his guilt of attempted murder. A person commits an attempt when, with the intent to commit a specific offense, he does any act which constitutes a substantial step towards the commission of that offense. (Ill. Rev. Stat. 1987, ch. 38, par. 8—4(a).) Proof of specific intent to kill is necessary to support a

conviction of attempted murder. Specific intent may be inferred from the character or nature of the assault, the accompanying circumstances, and the use of a deadly weapon. (*People v. Burdine* (1978), 57 Ill. App. 3d 677, 683, 373 N.E.2d 694, 700.) There is a presumption of intent to kill where one voluntarily and willfully commits an act, the natural tendency of which is to destroy another's life. *People v. Bell* (1983), 113 Ill. App. 3d 588, 594, 447 N.E.2d 909, 914.

■ Where a claim of self-defense is raised by a defendant, the State has the burden to prove beyond a reasonable doubt not only all of the elements of the offense, but to also overcome defendant's claim of justifiable use of force. (*People v. Jordan* (1985), 130 Ill. App. 3d 810, 811-12, 474 N.E.2d 1283.) The elements justifying the use of force for self-defense are: (1) that force is threatened against a person; (2) that the person threatened is not the aggressor; (3) that the danger of harm is imminent; (4) that the force threatened is unlawful; and (5) that the person threatened must actually believe that a danger exists, that the use of force is necessary to avert the danger and that the above beliefs are reasonable. (*Jordan*, 130 Ill. App. 3d at 812, 474 N.E.2d at 1285-86.) The use of deadly force is only permissible when the force threatened against a person will cause death or bodily harm. (*Jordan*, 130 Ill. App. 3d at 812, 474 N.E.2d at 1286.) Whether or not defendant was acting in self-defense is a question of fact for the jury to determine.

■ In the present case, defendant's argument that his use of force was justified and that he did not have the requisite specific intent to kill Younan and Jado is not persuasive in light of the evidence. The record shows that defendant shot an automatic weapon at a group of unarmed teenagers. All of the witnesses and victims testified that they remained seated until defendant pulled out his gun. Jado was shot in his left hip and wrist while he was trying to run away. Younan, who was shot in the left rear shoulder, testified that he was shot after taking four or five steps in an effort to evade defendant and that after he was hit by a bullet, he observed defendant and Maris running towards him as they were still shooting. Carlos Diaz testified that defendant took a gun out of his coat and started shooting directly at him.

It is the role of the jury as the fact finder to assess the credibility of the witnesses, the weight to be accorded their testimony and the appropriate inferences to be drawn therefrom. (*People v. Galvin* (1990), 207 Ill. App. 3d 713, 718, 566 N.E.2d 371, 374; *People v. Schorle* (1990), 206 Ill. App. 3d 748, 758, 565 N.E.2d 84, 90.) Although defendant testified that he did not intend to kill anyone, and that he fired random shots at the group in an effort to make the group disburse,

the jury was not required to accept defendant's testimony and version of events as true.

After viewing the evidence in the light most favorable to the prosecution, we hold that defendant was proven guilty of attempted murder beyond a reasonable doubt because the jury's verdict is neither improbable, unconvincing, inconclusive, nor contrary to human experience: Defendant's version of the events neither accounts for the fact that his victims were shot from behind, nor does it account for their testimony. The evidence, when viewed in the light most favorable to the State, shows that defendant was the aggressor; that defendant was not in imminent danger of death or great bodily harm from the use of unlawful force; that defendant did not believe that such a danger existed; and that defendant had the requisite specific intent to kill Younan and Jado. Specific intent may be inferred from defendant's use of a gun. (See *People v. Bell* (1983), 113 Ill. App. 3d 588, 594-95, 447 N.E.2d 909, 914; *People v. Burdine* (1978), 57 Ill. App. 3d 677, 683-85, 373 N.E.2d 694, 700-01.) It is not necessary for defendant to have brooded over his intent for any considerable length of time because every sane man is presumed to intend all the natural and probable consequences flowing from his own deliberate acts. (See *People v. Coolidge* (1963), 26 Ill. 2d 533, 536-37, 187 N.E.2d 694, 696-97.) Accordingly, defendant's convictions for attempted murder are affirmed.

We also hold that the trial court did not err in finding defendant guilty of the first degree murder of Fabian Diaz. Again, we are not persuaded by defendant's argument that he was not guilty because the State did not prove beyond a reasonable doubt that his use of force was not justified. A person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death, he either intends to kill or do great bodily harm to the individual or another, or he knows that such acts create a strong probability of death or great bodily harm to that individual or to another. (Ill. Rev. Stat. 1987, ch. 38, pars. 9—1(a)(1), (a)(2).) The evidence, when viewed in the light most favorable to the State, shows that defendant was the aggressor; that he was not threatened by the use of a unlawful force which would cause his death or render great bodily harm; and that he at least intended to render great bodily harm to Fabian Diaz or another or he knew that shooting in Diaz' direction with a handgun created a strong probability that Diaz would be fatally injured. The jury's guilty verdict on defendant's murder charge is neither inconclusive, improbable nor contrary to human experience.

We cannot reduce defendant's conviction for first degree murder

to second degree murder, because the State introduced sufficient evidence to prove beyond a reasonable doubt that defendant had no belief that he was in imminent danger of death or great bodily harm, and we cannot say that no rational trier of fact would have reached the same conclusion. Accordingly, defendant's conviction for murder is affirmed.

■ Next, defendant contends that section 9—1 of the Criminal Code of 1961 (Ill. Rev. Stat. 1987, ch. 38, par. 9—1) violates the equal protection and due process clauses of the Federal and Illinois Constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I), and it is contrary to the separation of powers provision in the Illinois Constitution. We disagree.

This court has held that section 9—1 of the Criminal Code does not violate the due process and equal protection clauses of the United States and Illinois Constitutions. (*People v. Collier* (1992), 228 Ill. App. 3d 159, 161, 592 N.E.2d 444, 446; *People v. Wright* (1991), 218 Ill. App. 3d 764, 775-78, 578 N.E.2d 1090, 1098-1100; *People v. Clark* (1991), 207 Ill. App. 3d 439, 444-49, 565 N.E.2d 1373, 1376-79.) Furthermore, defendant offers no authority to support his contention that section 9—1 violates the separation of powers doctrine enunciated in the Illinois Constitution. Moreover, we have held that the murder statute is not violative of this doctrine. (See *Wright*, 218 Ill. App. 3d at 778, 578 N.E.2d at 1100; *Clark*, 207 Ill. App. 3d at 449, 565 N.E.2d at 1379.) Therefore, defendant's constitutional challenges are without merit.

■ Finally, defendant contends that the trial court abused its discretion in sentencing him to 35 years' imprisonment for murder and 20 years' imprisonment for each count of attempted murder, because the court failed to consider the mitigating factors of his rehabilitative potential, his service in the Army reserves, his employment history and his lack of significant prior criminal activity.

The record shows that although defendant served in the Army reserves and he had a positive employment history, defendant also admitted being a member of the Simon City Royals street gang and he had a prior criminal history as demonstrated by his plea of guilty and a resulting six-month supervision for criminal trespass to land. The trial court had a duty to consider factors in aggravation and mitigation (Ill. Rev. Stat. 1987, ch. 38, par. 1005—4—1(a)(3)), and the record indicates that the trial court did so. Defendant correctly asserts that sentences must be determined with the objective of restoring the offender to useful citizenship. (See Ill. Const. 1970, art. I, § 11.) The Illinois Supreme Court, however, has mandated that the objective of restoring a defendant to useful citizenship must not be given greater

consideration than the seriousness of the offense for which defendant was convicted. (*People v. Waud* (1977), 69 Ill. 2d 588, 596, 373 N.E.2d 1, 4; see also *People v. Muhammad* (1993), 257 Ill. App. 3d 359, 370, 629 N.E.2d 106, 114; *People v. Tatum* (1989), 181 Ill. App. 3d 821, 826, 537 N.E.2d 875, 878.) Furthermore, defendant's sentence is within the statutory parameters for the offenses of first degree murder and attempted murder. First degree murder is punishable by a prison term of not less than 20 years and no more than 60 years. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(1).) Attempted murder is punishable by a prison term of not less than 6 years and not more than 30 years. Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(3).

A sentence may not be altered by a court of review absent a showing that the trial court abused its discretion. (*People v. Trimble* (1991), 220 Ill. App. 3d 338, 353, 580 N.E.2d 1209, 1218.) Defendant has failed to make such a showing. Accordingly, defendant's 35-year sentence for murder and his concurrent 20-year sentences for attempted murder are affirmed.

For the above reasons, defendant's convictions for first degree murder and attempted murder and his sentences for these offenses are affirmed.

Affirmed.

TULLY, P.J., and GREIMAN, J., concur.