**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 180115-U

Order filed May 13, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois. |
| Plaintiff-Appellee, | ) ) | Appeal No. 3-18-0115 |
| v. | ) ) | Circuit No. 16-CF-393 |
| RYAN C. MILLER, | ) ) | Honorable John P. Vespa, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SCHMIDT delivered the judgment of the court.
Justices O'Brien and Wright concurred in the judgment.

**ORDER**

¶ 1     *Held*: Defendant's aggregate sentence of 60 years' imprisonment was not excessive. The record was not sufficiently developed to address defendant's as-applied constitutional challenge.

¶ 2     A jury found defendant, Ryan C. Miller, guilty of three counts of aggravated battery and one count of unlawful possession of a firearm. He was 19 years old at the time of the offense. On appeal, defendant challenges his 60-year aggregate sentence of imprisonment, which he claims was a *de facto* life sentence. Defendant argues that his sentence was excessive and that it violated

the eighth amendment of the United States Constitution (U.S. Const., amend VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11). We affirm.

¶ 3                                            I. BACKGROUND

¶ 4        A grand jury charged defendant with three counts of aggravated battery (720 ILCS 5/12-3.05(e)(1) (West 2016)) in that he caused injury to Andrew Noll, Noah Remmert, and Julia Pavkov by shooting them with a handgun. The grand jury also charged defendant with unlawful possession of a firearm (*id.* § 24-3.1(a)(2)). Defendant was 19 years old at the time of the offense.

¶ 5        The evidence at defendant's jury trial tended to show that the incident occurred at a party in rural Peoria County. Defendant arrived at the party with his friend, Steve Covington. There was an argument regarding Jaquari Plice owing Covington money for marijuana. Plice eventually agreed to pay Covington. Covington and the other individuals that had accompanied him to the party, including defendant, began to leave. Defendant discharged a handgun several times. Defendant then entered a vehicle and discharged the handgun again to make sure that it was empty. Defendant told Covington that they would respect him now.

¶ 6        Officers later recovered seven shell casings from the scene and determined that they were discharged from a firearm owned by defendant's mother.

¶ 7        When defendant discharged the handgun, he struck three bystanders, Noll, Remmert, and Pavkov. All three victims were shot in the leg. As a result of Noll's gunshot wound, he had surgery on his calf. Noll testified that he was unable to hyperextend his leg, and he would have to wear a leg brace for the rest of his life. Remmert testified that his tibia was broken as a result of his gunshot wound. He had to have surgery, and he had pins in his leg. Remmert could walk well and suffered no lasting problems. Pavkov received stitches in her leg as a result of her injury.

¶ 8        The jury found defendant guilty of all charges.

¶ 9　　　　A presentence investigation report (PSI) was prepared. The PSI indicated that defendant had a prior adjudication of juvenile delinquency for possession of cannabis and a prior misdemeanor conviction for possession of cannabis. Defendant also had several prior convictions for ordinance violations and traffic offenses. The PSI indicated that defendant had several disciplinary violations in high school and eventually dropped out. He obtained his general equivalency diploma (GED). Defendant reported that he rarely drank alcohol but used drugs daily. Defendant used THC, Xanax, and ecstasy almost daily. Defendant said he also used cannabis and abused cough syrup with codeine.

¶ 10　　　　Noll's victim impact statement and a letter from Noll's father were attached to the PSI. Noll stated that he had the permanent condition of right drop foot and would have to wear a brace for the rest of his life to walk normally. Noll stated that, due to his injury, he could no longer pursue a career in law enforcement, fire science, or construction. Several letters of support from defendant's family and friends were attached to the PSI as well.

¶ 11　　　　At the sentencing hearing, defendant gave a statement in allocution apologizing for his actions. Defense counsel argued that the offense was "a reckless act by an immature individual." Defense counsel argued that defendant intended to intimidate the others when he discharged the handgun and that he was not aiming at anyone.

¶ 12　　　　The court sentenced defendant to 20 years' imprisonment on each of the three counts of aggravated battery. The court found that severe bodily injury occurred to two of the three victims and imposed consecutive sentences on those counts. The court sentenced defendant to three years' imprisonment for unlawful possession of a firearm, to be served concurrently with his other sentences. The total aggregate sentence was 60 years' imprisonment.

¶ 13       The court stated that it had considered the PSI, the evidence presented, the arguments of the parties, defendant's statement of allocution, the financial impact of incarceration, the statutory factors in mitigation and aggravation, the history and character of defendant, defendant's education, defendant's job history, the statements on defendant's behalf, defendant's potential for rehabilitation, and the circumstances and nature of the offense. In mitigation, the court found that defendant had no prior convictions for felony offenses and that defendant had led a law-abiding life for a substantial period of time before the commission of the present offense. In aggravation, the court found that defendant's conduct caused or threatened serious harm and the sentence was necessary to deter others from committing the same offense. The court noted that defendant had nine convictions for ordinance violations, a juvenile offense, and a misdemeanor. Defendant also had several "high school violations" for insubordination, fighting, bullying, illegal drugs, and disrespect to staff. The court noted that Noll reported that he had the permanent condition of right drop foot and would have to wear a brace for the rest of his life to walk normally. The court found that defendant had poor prospects for rehabilitation based on the fact that he dropped out of high school and reported using drugs frequently. The court acknowledged that defendant had received his GED.

¶ 14       The court stated that it viewed the fact that the offense was "random" as a "big negative." The court stated the offense occurred at a "bonfire, kids' party" and that no one would expect to be shot at such a party. The court noted that defendant was not personally involved in the argument preceding the shooting, and the argument was over at the time he fired the gun. The court noted that the victims were merely present at the party and did nothing to defendant.

¶ 15                              II. ANALYSIS

¶ 16                          A. Excessive Sentence

¶ 17     We first consider defendant's argument that his sentence was excessive. We find that the circuit court did not abuse its discretion in imposing an aggregate sentence of 60 years' imprisonment.

¶ 18     "The trial court has broad discretionary powers in imposing a sentence, and its sentencing decisions are entitled to great deference." *People v. Alexander*, 239 Ill. 2d 205, 212 (2010).

> "The trial court is granted such deference because the trial court is generally in a better position than the reviewing court to determine the appropriate sentence. The trial judge has the opportunity to weigh such factors as the defendant's credibility, demeanor, general moral character, mentality, social environment, habits, and age. [Citations.] Consequently, the reviewing court must not substitute its judgment for that of the trial court merely because it would have weighed these factors differently." *People v. Stacey*, 193 Ill. 2d 203, 209 (2000).

"A sentence within statutory limits will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." *People v. Fern*, 189 Ill. 2d 48, 54 (1999).

¶ 19     In the instant case, the three aggravated battery counts were Class X felonies, and the sentencing range for each count was 6 to 30 years' imprisonment. 720 ILCS 5/12-3.05(e)(1), (h) (West 2016); 730 ILCS 5/5-4.5-25(a) (West 2016). Defendant was subject to mandatory consecutive sentencing because the court found that he caused severe bodily injury to Noll and Remmert. 730 ILCS 5/5-8-4(d)(1) (West 2016). However, defendant's maximum aggregate sentence was capped at 60 years' imprisonment, the sum of the maximum sentences for the two most serious felonies. *Id.* § 5-8-4(f)(2).

¶ 20    The circuit court did not abuse its discretion in imposing an aggregate sentence of 60 years' imprisonment. The sentence was within the applicable range, albeit the maximum sentence. The sentence was not greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense. Defendant discharged a handgun at a party seven times when several individuals were in the vicinity. Defendant discharged the handgun due to a dispute that had ended at the time of the shooting. Defendant struck three bystanders who had nothing to do with the dispute, and his conduct had the potential to cause injury or death to more people. Noll was permanently disabled as a result of his injuries, which precluded him from pursuing many careers that he had been interested in. While defendant was 19 years old at the time of the offense, the court found that he had poor prospects for rehabilitation based on his daily drug use and the fact that he dropped out of high school. The court expressly considered defendant's lack of serious criminal history.

¶ 21    Defendant argues that the court should have imposed a lower sentence due to his lack of a predetermined plan to harm anyone at the party. While one interpretation of the randomness of defendant's actions may be that they were the result of youth and immaturity, as defendant urges, the randomness of his actions could also be interpreted as indicative of depravity. The circuit court viewed the random nature of the shooting in a negative light, and its sentencing decisions are entitled to great deference. See *Alexander*, 239 Ill. 2d at 212.

¶ 22    Defendant contends that the court did not impose his sentence with the objective of restoring him to useful citizenship, as he will either die in prison or be elderly when he is released. See Ill. Const. 1970, art. I, § 11 ("All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship."). However, "the objective of restoring a defendant to useful citizenship must not be given greater

consideration than the seriousness of the offense for which defendant was convicted." *People v. Feyrer*, 269 Ill. App. 3d 734, 744-45 (1994). Discharging a handgun seven times at a party where several people were in the vicinity was a very serious offense. We again note that the circuit court found that defendant's prospects for rehabilitation were poor.

¶ 23                                   B. Constitutional Claims

¶ 24         Defendant argues that his "sentences are *** unconstitutional as applied to him" because the circuit court failed to meaningfully consider his youth and potential for rehabilitation before imposing an aggregate sentence of 60 years' imprisonment, which was a *de facto* life sentence. Defendant contends that "emerging adults"—that is, adults under the age of 21—should not be sentenced to life terms without specific consideration of their youth and rehabilitative potential and a finding of incorrigibility. Defendant argues that his *de facto* life sentence violates both the eighth amendment of the United States Constitution (U.S. Const., amend VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I, § 11).

¶ 25         Initially, we question defendant's characterization of his argument as an as-applied constitutional challenge. Both parties refer to defendant's argument on appeal as a claim that his *sentence* was unconstitutional as applied to him. Facial challenges and as-applied challenges are two ways to challenge the constitutionality of a *statute*. See *People ex rel. Hartrich v. 2010 Harley-Davidson*, 2018 IL 121636, ¶ 12. "A party raising a facial challenge must establish that the *statute* is unconstitutional under any possible set of facts, while an as-applied challenge requires a showing that the *statute* is unconstitutional as it applies to the specific facts and circumstances of the challenging party." (Emphasis added.) *People v. Harris*, 2018 IL 121932, ¶ 38. A sentencing *statute* may be unconstitutional as applied to a particular defendant, but the sentence itself is either constitutional or unconstitutional. Given defendant's repeated characterization of his argument as

an "as-applied" challenge, we assume that defendant is arguing that the applicable sentencing statutes were unconstitutional as applied to him.

¶ 26                                    1. Eighth Amendment

¶ 27        Defendant argues that his sentence violates the eighth amendment. Defendant notes the United States Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460, 479 (2012), in which the Court held that the eighth amendment prohibited sentencing schemes that mandated life imprisonment without the possibility of parole for juveniles. The decision in *Miller* contained extensive discussion of the ways in which juveniles were different from adults. *Id.* at 471-77. The *Miller* Court noted that " 'developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds.' " *Id.* at 471-72 (quoting *Graham v. Florida*, 560 U.S. 48, 68 (2010)). The *Miller* Court stated that sentencing courts must "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 480.

¶ 28        The Illinois Supreme Court has interpreted *Miller* to send the "unequivocal message" that "[l]ife sentences, whether mandatory or discretionary, for juvenile defendants are disproportionate and violate the eighth amendment, unless the trial court considers youth and its attendant characteristics." *People v. Holman*, 2017 IL 120655, ¶ 40. The *Holman* court further held that "a juvenile defendant may be sentenced to life imprisonment without parole, but only if the trial court determines that the defendant's conduct showed irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation." *Id.* ¶ 46.

¶ 29        Defendant argues that the protections set forth in the *Miller* line of cases should extend to emerging adults as well as juveniles. Defendant notes that the "brain research" on which the *Miller* line of cases relied has "continued to evolve to show that the brains of young adults continue to

develop into their mid-20s." Defendant cites several law review articles in support of this proposition. Defendant argues that his case contains "all the hallmark feature of youth," including immaturity, impulsiveness, and the failure to appreciate the consequences of his actions. Defendant argues that the principles announced in *Miller* apply to him because he was only 19 years old at the time of his offense and "had the same diminished culpability and prospects for reform as juveniles."

¶ 30 However, the Illinois Supreme Court has never extended *Miller* protections to defendants who were 18 years old or older at the time of their offenses. In *Harris*, 2018 IL 121932, ¶ 50, the defendant argued that the eighth amendment protections for juveniles recognized in *Miller* should extend to all young adults under the age of 21 due to " 'the emerging scientific consensus on the ongoing neurological development of young adults.' " *Id.* The *Harris* court rejected the defendant's argument, holding that "for sentencing purposes, the age of 18 marks the present line between juveniles and adults." *Id.* ¶ 61. The court reasoned that the line the United States Supreme Court had drawn between juveniles and adults at the age of 18 was not primarily based on scientific research but rather was " 'the point where society draws the line for many purposes between childhood and adulthood.' " *Id.* ¶ 60 (quoting *Roper v. Simmons*, 543 U.S. 551, 574 (2005)).

¶ 31 In the instant case, to the extent that defendant is arguing that "emerging adults" should categorically receive *Miller* protections in sentencing, defendant's argument is precluded by our supreme court's holding in *Harris*. See *Blumenthal v. Brewer*, 2016 IL 118781, ¶ 28 ("[O]verruling a decision by the Illinois Supreme Court is an action the appellate court has no authority to take.").

¶ 32 To the extent that defendant is arguing that the applicable sentencing statutes violate the eighth amendment as applied to him based on the specific circumstances of his case and his

personal characteristics, we find that the record is not sufficiently developed to address his claim. "All as-applied constitutional challenges are, by definition, dependent on the specific facts and circumstances of the person raising the challenge." *Harris*, 2018 IL 121932, ¶ 39. " ' "A court is not capable of making an 'as applied' determination of unconstitutionality when there has been no evidentiary hearing and no findings of fact. [Citation.] Without an evidentiary record, any finding that a statute is unconstitutional 'as applied' is premature." ' " *Id.* (quoting *People v. Rizzo*, 2016 IL 118599, ¶ 26, quoting *People v. Mosley*, 2015 IL 115872, ¶ 47).

¶ 33    In the instant case, defendant did not raise his as-applied challenge in the circuit court, and, accordingly, the circuit court did not hold an evidentiary hearing on the claim or make any findings of fact. We acknowledge that the PSI contains some information about defendant's criminal background and personal history. We find the record insufficient to address this claim.

¶ 34    Defendant notes that the *Holman* court found that the record was sufficiently developed to address the defendant's as-applied challenge under *Miller* even though the defendant had raised the claim for the first time on appeal. See *Holman*, 2017 IL 120655, ¶ 32. Defendant requests that we make the same finding. However, unlike in *Holman*, defendant was an adult at the time of his offenses, and *Miller* does not apply directly to his circumstances. See *Harris*, 2018 IL 121932, ¶ 45.

¶ 35    We decline defendant's request that we remand the matter to the circuit court so that evidentiary findings may be made on this issue.

¶ 36                    2. Proportionate Penalties Clause

¶ 37    Defendant also raises an as-applied challenge under the proportionate penalties clause of the Illinois Constitution. The proportionate penalties clause provides: "All penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the

offender to useful citizenship." See Ill. Const. 1970, art. I, § 11. Defendant contends that his *de facto* life sentence violates the proportionate penalties clause given his young age because it offers no incentive of restoration to useful citizenship. Defendant also asserts that Illinois has begun to acknowledge emerging adults in the criminal justice system.

¶ 38        Like with his eighth amendment claim, we find that the record is not sufficiently developed to address defendant's claim that his sentence violates the proportionate penalties clause. As defendant failed to raise the claim in the circuit court, the circuit court did not hold an evidentiary hearing or make any findings of fact. Accordingly, we find that further factual development is needed. As with his eighth amendment claim, we decline to remand for an evidentiary hearing, but we note that defendant may raise the claim in a postconviction petition. See *Harris*, 2018 IL 121932, ¶ 48.

¶ 39        Finally, we reject defendant's reliance on *People v. House*, 2019 IL App (1st) 110580-B. In *House*, the defendant argued in a postconviction petition that the statute mandating that he receive a sentence of natural life imprisonment for first degree murder was unconstitutional. *Id.* ¶ 23. The *House* court held that the defendant's mandatory life sentence was unconstitutional as applied to him under the proportionate penalties clause of the Illinois Constitution based on his personal background, the fact that he was 19 years old at the time of the offense, and the fact that he served as a lookout rather than personally committing the offense. *Id.* ¶¶ 63-65. Unlike in *House*, defendant raises his as-applied challenge for the first time on direct appeal rather than in a postconviction proceeding. Accordingly, it is premature. See *Harris*, 2018 IL 121932, ¶ 46.

¶ 40                                          III. CONCLUSION

¶ 41        For the foregoing reasons, we affirm the judgment of the circuit court of Peoria County.

¶ 42        Affirmed.