(No. 15552.—Judgment reversed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* BENJAMIN J. NEWMARK, Plaintiff in Error.

*Opinion filed June 17, 1924.*

1. CRIMINAL LAW—*who are "jurors," within meaning of section 33 of Criminal Code, as to bribing judicial officers.* Unless otherwise designated, the term "jurors" includes all persons selected according to law for the purpose of serving as jurors whether or not they have been actually impaneled and sworn, and section 33 of the Criminal Code, declaring that those who attempt to corrupt jurors shall be guilty of bribery, applies to those who have been publicly designated for jury service as well as to those who have been actually impaneled and sworn.

2. SAME—*purpose of section 35 of the Criminal Code, as to immunity of witnesses.* The immunity order authorized by section 35 of the Criminal Code is for the purpose of compelling witnesses to testify in the investigation of bribery cases as defined in sections 31, 32, 33 or 34, and if the investigation is for some offense other than bribery this statute does not authorize the court to grant immunity.

3. SAME—*constitutional provision against compelling witness to give incriminating evidence will be liberally construed.* The provi-

312—40

sion of the constitution that "no person shall be compelled in any criminal case to give evidence against himself" will be applied in a broad and liberal spirit, in order to secure to the citizen that immunity from every species of self-accusation.

4. SAME—*when witness cannot be compelled to answer.* A witness cannot claim the privilege of silence for a purely fanciful or sentimental reason or for the purpose of securing a third person from prosecution, but if the proposed evidence has a tendency to incriminate the witness or to establish a link in the chain of evidence which may lead to his conviction, or if the proposed evidence will disclose the names of persons upon whose testimony the witness might be convicted of a criminal offense, he cannot be compelled to answer.

5. SAME—*when a witness may decide whether answer will incriminate him.* Before a witness can refuse to answer a question on the ground that it will incriminate him, it must appear to the court from all the circumstances that there is real danger to the witness, but the witness has the right to decide where the question is doubtful.

6. SAME—*statute granting immunity to witness cannot be construed to abridge constitutional privilege.* No statute granting a witness immunity from prosecution for the purpose of compelling him to give incriminating evidence can be so construed as to abridge the witness' constitutional privilege of silence, and the witness can not be compelled to answer questions which will leave him subject to prosecution notwithstanding the immunity order.

7. SAME—*when witness may refuse to answer series of questions—contempt.* Where a witness refuses to answer a series of questions on the ground that they will incriminate him, a conviction for contempt of court for refusing to answer the whole series cannot be sustained by picking out some questions which could have been safely answered, and if answers to any of the questions will have a tendency to subject the witness to criminal prosecution for offenses not within the immunity granted he is entitled to remain silent as to all of them.

8. SAME—*when immunity order does not protect witness from liability to prosecution.* An immunity order under section 35 of the Criminal Code will not protect a witness where the answers to the questions asked might subject him to liability to prosecution for subornation of perjury, intimidation, or other offenses not connected with the charge of bribery being investigated, or might furnish evidence to convict the witness of charges pending against him.

HEARD and DEYOUNG, JJ., took no part.

WRIT OF ERROR to the Circuit Court of Lake county; the Hon. ROBERT K. WELSH, Judge, presiding.

CHARLES H. SOELKE, and THOMAS D. NASH, (MICHAEL J. AHERN, and THOMAS E. SWANSON, of counsel,) for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, ASHBEL V. SMITH, State's Attorney, and EDWARD C. FITCH, (THOMAS J. SYMMES, of counsel,) for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

The grand jury of the circuit court of Lake county, at its March term, 1923, had under investigation the conduct of jurors in the case of *People v. Len Small.* May 26 plaintiff in error, Ben Newmark, was subpoenaed as a witness before said grand jury. Theretofore, on April 23, he had been charged in a criminal complaint filed by the State's attorney of said county before a justice of the peace with the offense of conspiring with certain other persons "to do an illegal act injurious to the administration of public justice by persuading and inducing certain witnesses having knowledge of certain facts tending to show the guilt of certain persons suspected of having committed a crime, to secrete themselves so they could not be produced as witnesses before the grand jury of Lake county," and had on the day he was taken before the grand jury appeared before said justice of the peace and had been admitted to bail in the sum of $5000. He objected to being sworn and interrogated by the grand jury on the grounds that he was a defendant under a criminal complaint then pending against him, that under the laws of Illinois he had a right to testify or not, as he pleased, and that his answers might incriminate him. March 26, 1923, there appeared in the final edition of the *Chicago Daily News,* under the caption, "Jury

Fixing Plot in Governor Small's Trial Bared to Grand Jury," an article which charged plaintiff in error and others with bribing or conspiring to bribe jurors summoned to appear in *People v. Small,* and by reason of this article plaintiff in error further objected to being sworn and interrogated by the grand jury on the ground that he feared the purpose of the examination was to obtain evidence against him with the object of indicting him. Thereupon the State's attorney filed in the circuit court a verified petition alleging that plaintiff in error was a material witness in an investigation then pending before the grand jury wherein Edward Kaufman, Edward Courtney and John B. Fields were under investigation on a charge of bribery under section 33 of the Criminal Code and that the testimony sought to be elicited from plaintiff in error would tend to incriminate him, and praying that plaintiff in error be released from all liability to be prosecuted or punished on account of matter to which he might be required to testify, and that he be ordered by the court to appear before said grand jury and testify in relation to the matters under investigation. Plaintiff in error was brought before the court, and a motion by him to strike the petition having been overruled, the immunity order was entered in accordance with the provisions of section 35 of the Criminal Code and he was directed to appear before the grand jury and testify. A series of sixty-two questions similar to those set out in *People* v. *Boyle,* (*ante,* p. 586,) were asked.

Plaintiff in error refused to answer all of said questions on the ground that his answers might tend to incriminate him. Thereupon an information in due form was filed in the circuit court setting out the facts and praying that plaintiff in error be directed to show cause why he should not be held in contempt of court. A rule was entered directing him to answer on or before June 4. Complying with this rule, plaintiff in error filed his answer setting up the fact that there was pending against him a criminal complaint

charging him with conspiracy; that he was under bond in the sum of $5000 to appear before the magistrate who issued the complaint; that he had been charged in the public press with conspiring with Kaufman, Courtney and others to bribe the jury in *People v. Small;* that the immunity order entered was not broad enough to protect him from prosecution for conspiracy, subornation of perjury, intimidation and criminal contempt; that section 35 of the Criminal Code applies only to persons formally charged with an offense defined in sections 31, 32, 33 or 34 of the Criminal Code; that he had no means of knowing whether he was so charged or not; that Michael Boyle had theretofore, on May 12, been interrogated by said grand jury; that among other questions asked him were the following:

"Did you ever hold any conference with Ben Newmark with reference to the case of *The People of the State of Illinois v. Len Small?*"

"Did you ever receive any money from Ben Newmark for the purpose of bribing a juror or prospective juror in the case of *The People v. Len Small?*"

"Did you ever receive from Ben Newmark any money to be used in any manner, shape or form for services rendered in any way, shape, manner or form in the case of *The People v. Len Small?*"

—that plaintiff in error believed that the purpose of so interrogating Boyle was to secure information on which to base an indictment against plaintiff in error; that from the questions asked Boyle he concluded that he was, in fact, under investigation by said grand jury in *People v. Small;* that Kaufman, Courtney and Fields had not been indicted for any of the offenses defined in sections 31, 32, 33 and 34 of the Criminal Code but had been charged by indictment with conspiracy; that in refusing to answer the questions propounded to him by the grand jury plaintiff in error in good faith believed, and now believes, that his answers to said questions might tend to incriminate him or lead to dis-

closures that would incriminate him or develop facts and circumstances which would tend to incriminate him of divers crimes and offenses other than the crime of bribery. Thereupon the court found plaintiff in error guilty of contempt and sentenced him to be imprisoned in the county jail of Lake county for a term of six months and to pay a fine of $100. The writ of error prosecuted to review that judgment is sued out of this court because it involves a construction of the constitution.

Section 33 of the Criminal Code provides, that "whoever corrupts, or attempts, directly or indirectly, to corrupt any * * * juror * * * by giving, offering or promising any gift or gratuity whatever, with intent to bias the opinion, or influence the decision of such * * * juror * * * in relation to any matter pending in the court," shall be guilty of bribery. Strictly speaking, a juror is one who has been sworn to try a cause, but it is manifest that the legislature did not use the term "juror" in this restricted sense. In the statute on jurors the legislature applies the term "juror" to persons who have been lawfully selected to serve as jurors. The statute directs the sheriff to summon the jurors and the judge to "examine jurors who appear," and if for any reason the panel is exhausted the clerk is directed to draw additional "jurors." All the statutes of this State and most of the law-writers apply the term "juror" to persons selected according to law for the purpose of serving as jurors, whether they have been actually impaneled and sworn or not. After a person has been selected in accordance with the provisions of section 8 of the Juror act he is no longer merely one of the great body of citizens possessing the qualifications of a juror, who may or may not, in fact, be called upon for jury service, but he is, from the time he is drawn until he is finally discharged, directly identified with the administration of justice. The purpose of the statute punishing those who attempt to corrupt judicial officers is to keep the channels of justice pure, and it

is just as important that the statute be made to apply to those who have been publicly designated for jury service as to those who have been actually impaneled and sworn. Such is the construction placed upon a similar statute in *State* v. *McCrystol,* 43 La. Ann. 907, 9 So. 922; *State* v. *Maddox,* 80 S. C. 452, 61 S. E. 964; *Marvin* v. *District Court,* 126 Iowa, 355, 102 N. W. 119; *United States* v. *Russell,* 255 U. S. 138, 41 Sup. Ct. 260.

Section 35 of the Criminal Code provides, that "whenever, in any investigation before a grand jury, or the trial of any person charged with any offense mentioned in either of the four preceding sections, it shall appear to the court that another person than the one charged is a material and necessary witness in the case, and that his testimony would tend to criminate himself, the court may cause an order to be entered of record that such witness be released from all liability to be prosecuted or punished on account of any matter to which he shall be required to testify, and upon such order being entered, such witness shall be compelled to testify; and if he shall testify, such order shall forever after be a bar to any indictment, information or prosecution against him for such matter." If the court, in its discretion, considers that the ends of justice require it, it is authorized by this section to grant immunity to a witness when upon investigation it concludes that the witness is both material and necessary to a successful prosecution of the party charged with one of the offenses mentioned in sections 31, 32, 33 or 34 of the Criminal Code. If the prosecution is for some offense other than the charge of bribery the statute does not give the court authority to grant the witness immunity. An immunity order entered pursuant to the statute would not protect the witness from prosecution for offenses revealed which were in no way connected with the charge of bribery being investigated. *People* v. *Boyle, supra.*

Section 10 of our bill of rights provides, that "no person shall be compelled in any criminal case to give evidence against himself." This is an ancient principle of the law of evidence and appears in every constitution written by the people of this country. It is a principle fortified by a long and uniform course of judicial decisions and has its foundation in natural justice. When a proper case arises this provision of our constitution should be applied in a broad and liberal spirit, in order to secure to the citizen that immunity from every species of self-accusation implied in the brief but comprehensive language in which it is expressed. (*People* v. *Spain*, 307 Ill. 283; *Counselman* v. *Hitchcock*, 142 U. S. 547, 12 Sup. Ct. 195.) A witness cannot claim the privilege of silence for a purely fanciful or sentimental reason or for purposes of securing from prosecution some third person who is interested in concealing the facts to which the witness could testify, (*People* v. *Spain, supra,*) but if the proposed evidence has a tendency to incriminate the witness or to establish a link in the chain of evidence which may lead to his conviction, or if the proposed evidence will disclose the names of persons upon whose testimony the witness might be convicted of a criminal offense, he cannot be compelled to answer. (*Minters* v. *People*, 139 Ill. 363; *Lamson* v. *Boyden*, 160 id. 613; *People* v. *Argo*, 237 id. 173; *Counselman* v. *Hitchcock, supra.*) While it is not enough for a witness to say that an answer will incriminate him, and while it must appear to the court, from all the circumstances, that there is real danger to the witness, he has the right to decide where the question is doubtful. (*People* v. *Spain, supra; People* v. *O'Brien,* 176 N. Y. 253, 68 N. E. 353.) Where it is sought by statute to authorize the courts to grant immunity to material witnesses, a construction must not be placed upon the immunity statute which will abridge the constitutional privilege of silence. We are clearly of the opinion that no statute which leaves the witness subject to prosecution after he an-

swers the incriminating question put to him can have the effect of supplanting the constitutional guaranty. We are supported in this conclusion by the following among other authorities: *Counselman* v. *Hitchcock, supra; People* v. *Argo, supra; Emery's case,* 107 Mass. 172; *Cullen* v. *Commonwealth,* 24 Gratt. 624.

One of the questions asked was: "Did you ever receive any money from anyone for services rendered by you in the case of *The People v. Len Small?*" If he had received money for doing an illegal act in connection with the case the persons from whom he received the money were witnesses wanted before the grand jury, and there was then pending against him a criminal complaint charging him with secreting such witnesses and with suppressing their testimony. If he had testified that he received money from certain persons and conspired with them to use the money for the purpose of influencing the testimony of witnesses, he would have subjected himself to prosecution for a conspiracy to do an illegal act injurious to the administration of public justice. This offense would be complete the moment the conspiracy was formed, and the conspirators would be subject to prosecution notwithstanding the fact that no witness was corrupted or that there was no attempt to corrupt a witness. If he had testified that he received money which he used to cause a witness to swear falsely in a matter material to the issue in the case on trial he would have subjected himself to a prosecution for subornation of perjury, which is an infamous crime.

Another question asked him was: "Did you ever give to anyone any money for services of any kind rendered by said person in the case of *The People v. Len Small?*" If he had answered that he had employed a person to do an illegal act in connection with the trial he would have furnished the information which would have convicted him of the offense with which he stood charged by the criminal complaint pending against him before a justice of the peace.

If he was conspiring with persons to illegally influence the result of the trial, those were the persons he was secreting and it was their testimony he was suppressing. Suppose he had answered that he had given money to certain persons to commit unlawful acts, with force and violence, against the person or property of some of the jurors or witnesses, in violation of section 164 of the Criminal Code, he would have subjected himself to a prosecution for intimidation,—an offense punishable by imprisonment in the penitentiary. Suppose he had given money to a witness in an attempt to procure the witness to give perjured testimony he could have been prosecuted for an attempt to suborn such witness though the witness did not, in fact, testify on the trial, or, if such witness did testify, he did not testify falsely. Suppose he gave money to certain corrupt persons to be in and about the court house so that the sheriff might select them to serve as jurors in case the panel was exhausted by challenges he would not have committed the offense of bribing a juror but he would have subjected himself to a prosecution for conspiracy to do an illegal act injurious to the administration of public justice.

A third question asked was: "Did you ever hold any conferences with Michael Boyle with reference to the case of *The People v. Len Small?*" Suppose he had answered this question in the affirmative and had said that he and Boyle had talked about certain witnesses who had been corruptly influenced and that they had arranged with these witnesses to secrete themselves and to refuse to give the grand jury information. This would have been evidence directly tending to convict plaintiff in error of the charge then pending against him. An answer to this question might have subjected him to any number of prosecutions for doing unlawful acts to interfere with the administration of justice.

Let these examples suffice. They show that plaintiff in error could not have answered some of the questions in the series without directly charging himself with crimes for

which no immunity was granted under the order of the court. Grant that there are questions which plaintiff in error could have answered without endangering himself, he is under commitment for refusal to answer all of them. It was one examination relating to one subject, and the questions culminated in an effort to show his connection with obstructing the administration of justice. Where there is a series of questions, a conviction for contempt of court for refusing to answer the questions cannot be sustained by picking out one question which could have been safely answered. If answers to any of a series of questions would have a tendency to subject the witness to criminal prosecution he is entitled to remain silent as to all of them. (*Foot v. Buchanan,* 113 Fed. 156.) Plaintiff in error merely claimed the privilege which the constitution of this State guarantees to him, and there is no showing that his refusal to answer the questions was contumacious.

The judgment of the circuit court of Lake county must be and is reversed.    *Judgment reversed.*

Heard and DeYoung, JJ., took no part in the decision of this case.