THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. HUMBERTO MEDRANO, Defendant-Appellant.

First District (3rd Division)    No. 1—92—0913

Opinion filed March 8, 1995.

Earl L. Washington and Patricia Bender, both of Washington & Bender, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Kenneth T. McCurry, and Christine Cook, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Defendant, Humberto Medrano, was found guilty of attempt to commit first degree murder (Ill. Rev. Stat. 1989, ch. 38, pars. 8—4, 9—1), and armed violence (Ill. Rev. Stat. 1989, ch. 38, par. 33A—2), and sentenced to 24 years' imprisonment for the attempted murder. We affirm.

The issues for review in this case are (1) whether defendant was denied effective assistance of counsel; (2) whether the trial court erred when it allowed the victim to invoke his fifth amendment privilege against self-incrimination; (3) whether defendant's confession relating to his underlying motive for attempted murder should have been admitted into evidence; (4) whether defendant was proven guilty of attempt to commit first degree murder beyond a reasonable doubt; (5) whether the prosecutor's closing arguments deprived defendant of a fair trial; (6) whether defendant's attempt to commit first degree murder conviction may stand; and (7) whether defendant's 24-year sentence was excessive.

Defendant was charged with attempt to commit first degree murder, armed violence and aggravated battery of Peter Quiroz on August 22, 1989. Defendant was tried on a theory of accountability because defendant was the driver of a vehicle from which shots were fired from the passenger side, in a "drive-by" shooting involving rival

gangs. Defendant was alleged to have belonged to the Latin Kings gang, while the victim was alleged to have belonged to the Satan Disciples gang.

The State's case in chief consisted of testimony from civilian witnesses, police officers and a statement made by defendant. The victim, Peter Quiroz, did not testify. Quiroz refused to testify and invoked the fifth amendment privilege against self-incrimination on the grounds that testimony of his gang affiliation in the present case would incriminate him in regards to a pending murder charge, in an unrelated case, also involving gang activity.

Cynthia Ochoa testified that on the night of August 22, 1989, she was visiting her friends, Peter Quiroz and Christopher and Jerry Mendoza, who lived at 28th and Komensky Avenue, in Chicago, Illinois. She testified that Quiroz and Christopher Mendoza belonged to the Satan Disciples gang. Ochoa testified that she left the Mendoza house around 10 p.m. and went outside on the curb where she talked to Quiroz, Jerry Mendoza and another person unknown to her. Ochoa further testified that she was leaning against a car with her back to the street during the course of this conversation, while Quiroz was standing next to her, Jerry Mendoza was standing in front of her, and the other person was standing to her left side facing sideways. Ochoa testified that at that time, she saw a beige buick drive by twice, headed southbound on Komensky. She further testified that the car came down the street a third time and slowed down, whereupon Jerry Mendoza pushed her to the ground. Ochoa stated that she then heard shooting and felt a bullet go past her head. After hearing the sound of crashing cars, she observed Quiroz standing across the street holding his right shoulder. Jerry and Christopher Mendoza corroborated Ochoa's testimony. Christopher Mendoza further testified that he saw the defendant, whom he knew by the name of "Bird," run from the driver's side of the vehicle.

It was stipulated that Dr. Huang, a physician at Mount Sinai Hospital, would testify, if called, that he examined Peter Quiroz on August 22, 1989, and found a four-millimeter gunshot wound in Quiroz's chest on the right posterior side, a few inches away from the armpit. It was further stipulated that Dr. Hechet, a radiologist at Mount Sinai Hospital, would testify that X rays of Quiroz performed on August 22, 1989, revealed a large bullet fragment on the victim's right hemeral neck with multiple adjacent fragments.

Chicago police officer Thomas Mazursky, an expert witness on gangs, explained that there are two factions of street gangs; the "People" and the "Folks." Officer Mazursky further explained that there are numerous gangs in these two alliances. The Folks, led by

the Disciples, use a six-point star as their coat-of-arms, and the People, who are led by the Vice-Lords use a five-point star. Officer Mazursky stated that the gangs use their respective consortium star symbols to mark the borders of their gang's territory. The two factions of People and Folks were at war with each other around the date of the shooting. On June 25, 1989, around 11:30 p.m., Officer Mazursky saw defendant driving in the vicinity of 3101 West 26th Street and later he saw the same car in Latin Kings (People) territory after it had been burned.

Violent crimes detective Eugene Simpson testified that on August 25, 1989, he and his partner interviewed defendant at the 10th District police station, after advising him of his *Miranda* rights. Later, Assistant State's Attorney Mary Margaret Brosnahan read defendant his *Miranda* rights again and recorded his statement. After a trial, the jury found defendant guilty of attempt to commit first degree murder and armed violence whereupon he was sentenced to 24 years for attempted murder. Defendant appeals his convictions and his sentence.

First, defendant contends that he was denied effective assistance of counsel when defense counsel (1) failed to file a motion to quash arrest and suppress evidence on the proper basis; (2) failed to tender a "mere presence" instruction to the jury; and (3) failed to object to Officer Mazursky's testimony on the proper grounds.

The requisite standard of quality for an attorney's advocacy is that of reasonably effective assistance pursuant to prevailing professional norms. (*Strickland v. Washington* (1984), 466 U.S. 668, 687-88, 80 L. Ed. 2d 674, 693-94, 104 S. Ct. 2052, 2064-65.) In order for a defendant to prove that he received assistance from his attorney that was so ineffective as to merit the reversal of his conviction, the defendant must show that his counsel made errors so grave and that his performance was so deficient that he did not function in a manner commensurate with the sixth amendment standard for advocacy, and that these deficiencies deprived him of a fair trial with a reliable result. (*Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.) In order for a defendant to establish that his attorney's deficiencies deprived him of a fair trial, the defendant must overcome the strong presumption that counsel's complained-of action or inaction was merely trial strategy. (*Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065.) Even if a defendant establishes that his counsel's performance was materially deficient, he must still demonstrate that he was prejudiced by defense counsel's error. *Strickland*, 466 U.S. at 687-88, 80 L. Ed. 2d at 693-94, 104 S. Ct. at 2064-65.

■ In the present case, defendant received effective assistance of counsel. Although on appeal defendant argues that trial counsel should have moved to quash his arrest and suppress evidence on the basis of illegal arrest, defendant has failed to overcome the strong presumption that not filing the motion constituted trial counsel's sound trial strategy. The record shows that trial counsel did in fact file a pretrial motion to suppress defendant's statement on the basis of coercion. Trial counsel, however, later withdrew the motion and attempted to raise the issue of coercion before the jury. An attorney's decision whether or not to move to suppress evidence is one involving trial strategy and therefore outside the scope of review for purposes of establishing incompetency of counsel. (*People v. Martin* (1992), 236 Ill. App. 3d 112, 121, 603 N.E.2d 603, 609.) The fact that the strategy of filing a motion to suppress was unsuccessful for defendant in the present case is not proof of his attorney's incompetence. *People v. Conley* (1983), 118 Ill. App. 3d 122, 131, 454 N.E.2d 1107, 1115.

In addition, the trial court's rejection of defendant's "mere presence" instruction was not a result of defense counsel's incompetence. Defendant argues that "[i]t was prejudicial error for counsel not to have tendered a mere presence instruction in light of the evidence." The record, however, shows that counsel did tender a "mere presence" instruction, but the trial court rejected the instruction and precluded it from being submitted to the jury. Again, defendant's complaint does not amount to ineffective assistance of counsel.

Finally, defendant's complaint that defense counsel was ineffective on the basis that he failed to object to the admission of Officer Mazursky's testimony on the grounds that it was irrelevant and prejudicial also fails. The record shows that defense counsel did object to Officer Mazursky's testimony. Before Officer Mazursky testified, the prosecutor stated that he wanted to introduce evidence through Officer Mazursky of a prior incident involving defendant's reckless conduct and his destruction of a van, and that he wanted him to testify as an expert on gangs. Defense counsel objected to both segments of testimony on the basis of surprise. The trial court precluded the prosecutor from referring to defendant's reckless conduct arrest but allowed the prosecutor to elicit information regarding defendant's having destroyed a van. Defense counsel then made a second objection to Officer Mazursky's testifying as a gang expert, but the trial court ruled that the defense did not need special notice that Officer Mazursky would testify as an expert on the subject of gangs. The fact that defendant believes that defense counsel should have objected to the testimony in question on a different basis is merely an argument relating to trial strategy. For the aforementioned reasons, defense counsel's assistance was not ineffective.

■ Next, defendant contends that the trial court erred when it allowed the victim to invoke his fifth amendment privilege against self-incrimination. We disagree. Once a witness in a criminal case asserts his fifth amendment privilege not to incriminate himself, then the circuit court must determine if, under the particular facts, there is a real danger of incrimination. (*People v. Redd* (1990), 135 Ill. 2d 252, 304, 553 N.E.2d 316, 339.) The privilege extends not only to answers that would in themselves support a conviction but also to answers that might furnish a link in a chain of evidence needed to prosecute the witness for a crime. (*People v. Cooper* (1990), 202 Ill. App. 3d 336, 342, 559 N.E.2d 942, 945.) The victim, Peter Quiroz, had a gang-related murder charge pending. The trial court properly considered that if Quiroz were made to testify he would be faced with questions relating to his gang affiliation. Since the pending murder trial against Quiroz involved a shooting where gang affiliation would be incriminating, forcing Quiroz to testify would have provided evidence for the prosecutor in the pending murder charge. Therefore, the victim had a colorable fifth amendment privilege claim.

Next, defendant contends that the trial court erred in permitting testimony concerning the fire bombing of his van prior to the shooting of Quiroz because he was unfairly prejudiced by the admission of this evidence and because evidence was too remote in time to serve as a motive for the shooting.

The prosecution elicited testimony regarding the burning of defendant's van from Officer Mazursky. During a sidebar, the prosecutor explained why he wanted Officer Mazursky to testify regarding the van:

"The reason that this is significant is that in his statement to State's Attorney Mary Margaret Brosnahan, which was a handwritten statement, he makes a reference that as a motivation for the shooting, this August 22, 1989, is that the Disciples had burned his car and thrown bricks through his window, and we feel that this testimony by Officer Mazursky would do two things. One, it would link up the purpose for the officer stopping him on the night of August 22 about a half an hour before the shooting, and it would also be a tie in between that—

[THE COURT]: Did this officer see the fire-bombed vehicle?

[PROSECUTOR]: Yes, he did."

The trial court allowed the prosecutor to elicit testimony regarding defendant's burned van.

Assistant State's Attorney Brosnahan recorded defendant's statement as follows:

"[T]he members of the Latin Kings and members of the Disciples gang are fighting. Humberto states that the Latin Kings belong with the People and the Disciples being with the Folks. Humberto states that the People and the Folks are enemies. Humberto also states that the Disciples have burned his car and thrown bricks through the window."

It is within the trial court's discretion to decide whether evidence is relevant and admissible. Absent a clear abuse of discretion resulting in manifest prejudice to the defendant, that decision will not be reversed on appeal. (*People v. Hayes* (1990), 139 Ill. 2d 89, 130, 564 N.E.2d 803, 820.) "Relevant evidence is defined as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence." (*People v. Eyler* (1989), 133 Ill. 2d 173, 217, 549 N.E.2d 268, 288.) A prosecutor may argue the evidence presented or reasonable inferences drawn therefrom. *People v. Stuckey* (1992), 231 Ill. App. 3d 550, 563, 596 N.E.2d 646, 655.

■ The fact that defendant mentioned his burned van and that the Disciples, defendant's enemies, were responsible for its destruction, led the prosecutor to draw a logical inference that defendant and his friends attempted to kill the victim in retaliation for the destruction of his van. Therefore, the prosecutor's argument that defendant had a premeditated intent to kill based on the burning of his van was a reasonable inference based on the evidence.

Next, defendant contends that he was not proven guilty of attempt to commit first degree murder beyond a reasonable doubt. We disagree. The relevant inquiry upon judicial review of the sufficiency of the evidence of a criminal conviction is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) (*Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.) Murder is the unlawful killing of another person with malice aforethought. (Ill. Rev. Stat. 1989, ch. 38, par. 9—1.) "A person commits an attempt when, with the intent to commit a specific offense, he does any act which constitutes a substantial step toward the commission of that offense." (Ill. Rev. Stat. 1989, ch. 38, par. 8—4(a).) Proof of specific intent to kill is necessary to support a conviction of attempted murder. Specific intent may be inferred from the character or nature of the assault, the accompanying circumstances, and the use of a deadly weapon. (*People v. Burdine* (1978), 57 Ill. App. 3d 677, 683, 373 N.E.2d 694, 700.) There is a presumption of an intent to kill where one voluntarily commits an act, the natural

tendency of which is to destroy another's life. *People v. Bell* (1983), 113 Ill. App. 3d 588, 594, 447 N.E.2d 909, 914.

■ The evidence in the present case, when viewed in the light most favorable to the prosecution, establishes defendant's guilt of attempt to commit first degree murder beyond a reasonable doubt. Defendant's participation in the offense was a substantial step in the commission of attempted murder. Defendant was the driver of the car from which the shots were fired. Witnesses testified that defendant drove his car down Komensky Avenue three times before shooting Quiroz. An inference which could be drawn from defendant driving his car down the street twice is that defendant and his companions were surveying the area and trying to determine whether or not Quiroz and his friends were Disciples. Witnesses testified that the last time defendant drove down Komensky, he slowed the car down. An inference which could be made from such an action is that defendant was attempting to insure that whoever fired the shots would have a clear opportunity to hit the intended victim or victims. Finally, defendant, in his statement, articulated his intent to kill Quiroz:

> "On August 22, 1989, Humberto states that he was driving his car and picked up his friend Miguel Kilver, at approximately 9:45 p.m. Humberto also had another friend, Jesus Ortega, in the back seat. Humberto states that Miguel Kilver showed him a loaded gun which he had when he got into the car. Humberto stated that they decided to go and get some Disciples. Humberto stated that they went over to the 2700 block of South Komensky to look for Disciples.
>
> As Humberto was driving down the block on 2700 South Komensky, Miguel fired three or four shots into a group of Disciples."

Accordingly, we hold that the evidence was sufficient to support defendant's conviction for attempted murder.

Defendant next contends that the prosecutor's comments during the State's closing argument deprived him of a fair trial. Initially, the State contends that defendant has waived this issue for review. In the alternative, if we choose to review this issue, the State maintains that the complained-of remarks were proper as they were based upon the evidence adduced at trial.

The record shows that defendant failed to object to the admission of some of the statements which he now contends are objectionable, and that he failed to mention any such objections in his post-trial motion. We will, however, review this issue pursuant to Illinois Supreme Court Rule 366(a)(5) (134 Ill. 2d R. 366(a)(5)). Under Rule 366(a)(5), this court may, in the exercise of its responsibility to insure that a cause has a just result, ignore the doctrine of waiver and decide a case on grounds not properly raised or not raised at all by

the parties. *People v. Shelton* (1993), 252 Ill. App. 3d 193, 200-01, 624 N.E.2d 1205, 1210.

■ We hold that the complained-of remarks in the present case did not amount to reversible error. First, defendant contends that the following prosecutorial argument was improper:

> "Why are they looking for these people and plan to do this? We heard testimony from Police Officer Mazursky that Mr. Medrano's van was burnt in June of 1989 and even says in his own statement to the State's Attorney and Detective my van was burned by these people. That's his motive. Premeditation. That's his reason for planning and looking for these people."

As we noted above, the prosecutor's theory that the shooting was premeditated was based on defendant's own statement and reasonable inferences drawn therefrom. A prosecutor may argue the evidence presented or reasonable inferences drawn therefrom. *People v. Stuckey* (1992), 231 Ill. App. 3d 550, 563, 596 N.E.2d 646, 655.

Defendant further alleges that the prosecutor improperly argued that defendant had the requisite intent to kill. The prosecutor made the following argument:

> "The defendant in this matter is charged with attempt first degree murder. From what the defendant did here is that he intended to kill these people, to kill Peter Quiroz at 2750 South Komensky. And how do we know there was an intent to kill? Think of premeditation. Think of planning to get some D's. If you couple the phrase, if you keep the phrase by itself, it really has no meaning. It's just a verb. But get some Disciples and couple that with the fact there was a loaded gun in the car, does it take Einstein, an Ivy Leaguer or a professor to figure out what's going to happen when you drive into the neighborhood of the people that burned his van? There was intent to kill when Officer Mazursky saw him in the car with those two men.
>
> This is a seventeen year old. He's older than the other people in the car. It's his car. He controlled what was going on. He intended what goes on and he intended what occurred by his very actions, slowly pulling up less than two yards away, less than six feet.
>
> This isn't a situation where kids are celebrating New Years firing one shot in the air. He intended to shoot people and they fired four shots into a crowd of four people from less than six feet away from a car that virtually is not moving.
>
> Intent to kill just screams out of the entire situation. The intent to kill is shown by the person being shot, by the person having a bullet lodged in his body."

We hold that the above comments were proper. The prosecutor was drawing inferences from the evidence (see *Stuckey*, 231 Ill. App. 3d at 563, 596 N.E.2d at 655), and there is a presumption of an intent to

kill where one voluntarily commits an act, the natural and probable consequence of which is to destroy another's life (see *People v. Bell* (1983), 113 Ill. App. 3d 588, 594, 447 N.E.2d 909, 914).

Defendant further contends that the prosecutor improperly argued that the State's witnesses were courageous because this was misleading to the jury. The statement reads as follows:

> "The reason we heard all this evidence is that people come in here, people had the courage to come in here and testify up on that witness stand and when they testified, when they testified in the last couple of days, they took an oath and that was an oath to tell the truth, the whole truth and nothing but the truth, so help them God."

The record shows that the prosecutor was commenting upon how the evidence of defendant's guilt was presented by very credible witnesses and was therefore a proper argument. See *People v. Morrison* (1985), 137 Ill. App. 3d 171, 184, 484 N.E.2d 329, 340.

Defendant also contends that the prosecutor's comment that the victim did not testify due to charges pending against him was improper because it implied that the witnesses were afraid of him. The record shows that the prosecutor never argued that the witnesses had courage to testify and return to rival gang turf with their identities having been exposed. The prosecutor merely commented that it took courage to come forward and relive a terrible moment. Defendant also complains that this comment was meant to gain empathy for the witnesses. The State's witnesses, however, were gang members involved in a gang war. The jury was therefore unlikely to be sympathetic towards them.

Furthermore, the jury was instructed by the trial court that the closing arguments are not evidence and should be disregarded if they are not supported by the evidence. Statements made during closing arguments constituting alleged prejudice to defendant can be cured when the trial court subsequently instructs the jury that closing arguments are not evidence and should be disregarded if any argument is not based upon the evidence. (*People v. Scott* (1990), 194 Ill. App. 3d 634, 645, 551 N.E.2d 288, 295-96.) Accordingly, none of the prosecutor's comments during the State's closing arguments constituted reversible error.

■ Next, defendant contends that his conviction for attempted murder cannot stand because each of the offenses for which defendant was charged, including armed violence, arose out of the same physical act, that being the shooting of Quiroz. We will not reverse defendant's convictions and sentence on this basis because the record shows that defendant was only convicted and sentenced for attempt to commit first degree murder, while no judgment or sentence was

ever entered on the armed violence count. See *People v. Kaczmarek* (1993), 243 Ill. App. 3d 1067, 1082, 613 N.E.2d 1253, 1264 ("The final judgment in a criminal case is the sentence, and in the absence of the imposition of a sentence, an appeal cannot be entertained").

■ Finally, defendant contends that his 24-year sentence was excessive and that deterrence should not have been the sole factor considered in formulating his sentence. A sentence of 6 to 30 years may be imposed for the offense of attempted murder (Ill. Rev. Stat. 1989, ch. 38, pars. 8—4(c), 9—1, 1005—8—1(a)(3)). A trial court's sentence will not be disturbed absent an abuse of discretion (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882, 883). We will not substitute our judgment for that of the trial court merely because we would weigh factors differently. Deterrence was not the sole factor the trial court considered when sentencing defendant. The trial court also considered defendant's age; at 17, defendant was the oldest person in the car. Furthermore, the trial court was aware that defendant had young children and supportive parents. Defendant was eligible for a maximum 30-year sentence in this case. After reading the record, we see no abuse of discretion. Therefore, the 24-year sentence is affirmed.

Accordingly, the judgment appealed from is affirmed.

Affirmed.

GREIMAN, P.J., and TULLY, J., concur.