THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JARVIS McNEAL, Defendant-Appellant.

First District (3rd Division)    No. 1—97—1170

Opinion filed December 4, 1998.

890

Rita A. Fry, Public Defender, of Chicago (Cheryl K. Lipton, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, James Fitzgerald, and James P. Lynch, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LEAVITT delivered the opinion of the court:

A judge found Jarvis McNeal in direct criminal contempt of court after he invoked his fifth amendment privilege against self-

incrimination and refused to testify as a prosecution witness/victim at Dante Brown's trial for murder, attempted murder and aggravated battery. The judge sentenced McNeal to six months' incarceration and ordered that sentence to run consecutively with whatever sentence might later be imposed for then-pending charges against McNeal of murder and unlawful use of a weapon. We reverse the trial court's order and vacate McNeal's sentence.

## I. FACTS

Brown was charged with the July 1993 gang-related murder of Gary Pittman and attempted murder of Jarvis McNeal at 5700 South Paulina in Chicago. McNeal was charged much later with a gang-related murder that occurred in December 1995, within a two- or three-block radius of 5700 South Paulina, and unlawful use of a weapon in an unrelated incident. In October 1996, McNeal indicated, through counsel, he intended to invoke his fifth amendment right and refuse to testify at Brown's trial. At a hearing held to determine whether McNeal would be allowed to refuse to testify, McNeal's lawyer urged the two men's crimes were part of a series of shootings in an ongoing gang war in the neighborhood and that McNeal's testimony, which would certainly include his gang affiliation, would be incriminating at his own murder trial. The judge however found there was no reasonable basis for McNeal's refusal to testify.

On January 14, 1997, when McNeal was called and sworn, he refused to testify, even after the judge ordered him to do so. The judge found him in direct criminal contempt of court. The judge further instructed McNeal could change his mind and testify at any time during the Brown trial and thereby avoid being sentenced for contempt. McNeal never altered his position, and, after Brown was convicted, the judge sentenced McNeal.

## II. ISSUES

McNeal raises the following issues: (1) whether the judge erred in finding invocation of his fifth amendment right to refrain from self-incrimination was improper and contemptuous; (2) whether a criminal contempt citation was the proper remedy if contemptuous conduct in fact occurred here; and (3) whether the judge erred in imposing a sentence to be served consecutively with any potential future sentence. The State concedes a sentence may not be ordered to run consecutively with a sentence not yet imposed, and the judge's ruling in that respect was erroneous. *People v. Reed*, 237 Ill. App. 3d 561, 562, 604 N.E.2d 1107 (1992).

## III. ANALYSIS

■ The fifth amendment provides, in part, "No person *** shall be compelled *** to be a witness against himself ***." U.S. Const., amend. V; see also Ill. Const. 1970, art. I, § 10. The United States Supreme Court long ago stated the policies and purposes of the fifth amendment:

> "It reflects many of our fundamental values and most noble aspirations: our unwillingness to subject those suspected of crime to the cruel trilemma of self-accusation, perjury or contempt; *** our sense of fair play which dictates 'a fair state-individual balance by requiring the government *** in its contest with the individual to shoulder the entire load,' [citation] our respect for the inviolability of the human personality ***; our distrust of self-deprecatory statements; and our realization that the privilege, while sometimes 'a shelter to the guilty,' is often 'a protection to the innocent.' [Citation.]" *Murphy v. Waterfront Comm'n of New York Harbor*, 378 U.S. 52, 55, 12 L. Ed. 2d 678, 681-82, 84 S. Ct. 1594, 1596-97 (1964).

■ While the accused may assert the privilege as an excuse for refusing to take the stand, a witness may assert the privilege only with respect to particular questions. *United States v. Manno*, 118 F. Supp. 511, 517 (N.D. Ill. 1954). Furthermore, a witness may exercise his right to avoid self-incrimination only where he has reasonable cause to suspect the possibility of subsequent prosecution from a direct answer. However, the witness need not prove the answer to a particular question would necessarily subject him to prosecution. *People v. Cooper*, 202 Ill. App. 3d 336, 341, 559 N.E.2d 942 (1990). As the United States Supreme Court stated:

> "[I]f the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim 'must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.' [Citation.]" *Hoffman v. United States*, 341 U.S. 479, 486-87, 95 L. Ed. 1118, 1124, 71 S. Ct. 814, 818 (1951).

The privilege extends not only to answers that would in themselves support a conviction but also to answers that might furnish a link in a chain of evidence needed to prosecute the witness for a crime. *Cooper*, 202 Ill. App. 3d at 341.

■ The privilege against self-incrimination must be liberally construed in favor of the accused or the witness. *Hoffman*, 341 U.S. at 487, 95 L. Ed. at 1124, 71 S. Ct. at 818; *People v. Newmark*, 312 Ill. 625, 632, 144 N.E. 338 (1924). A witness may be denied the privilege only when it is " 'perfectly clear, from a careful consideration of all the circumstances in the case,' " that the answers sought " 'cannot possibly have [a] tendency' " to incriminate. *Cooper*, 202 Ill. App. 3d at 342, quoting *Hoffman*, 341 U.S. at 488, 95 L. Ed. at 1125, 71 S. Ct. at 819. The trial court has discretion to determine whether the witness has a valid basis for invoking the fifth amendment right against self-incrimination. *People v. Redd*, 135 Ill. 2d 252, 304, 553 N.E.2d 316 (1990). But any uncertainty as to whether a question calls for an incriminating answer is to be resolved in favor of the witness' determination. *People v. Spain*, 307 Ill. 283, 290, 138 N.E. 614 (1923); *Newmark*, 312 Ill. at 632.

As we stated earlier, at the hearing the trial court held to determine whether McNeal's invocation of his fifth amendment right was proper, McNeal asserted (1) he and Dante Brown belonged to rival gangs, (2) the crimes with which he and Brown were charged were gang-related and occurred in the same two- to three-block area, (3) Brown's alleged illegal acts were committed in retaliation for McNeal's prior bad acts, and (4) answering questions about gang affiliation, alliances, rivalries, activities, retaliations and their motivations would be incriminating as to the pending unlawful use of a weapon and murder charges against McNeal along with potential future charges. The prosecution essentially argued Brown's and McNeal's crimes were unrelated and that McNeal's testimony could not possibly place him in jeopardy. Based on the facts adduced at that proceeding, the record before us, and the legal precepts outlined above, we find the court abused its discretion in refusing to allow McNeal to invoke his fifth amendment right and ordering him to "answer any questions propounded to [him] consistent with this case by the State's attorney."

McNeal analogizes his case to *People v. Medrano*, 271 Ill. App. 3d 97, 648 N.E.2d 218 (1995), and we find that case, to some extent, helpful. There, the trial court allowed a witness/victim in a gang-related murder, attempted murder, armed violence, and aggravated battery trial to invoke his fifth amendment privilege against self-incrimination where the witness had a gang-related murder charge pending. We affirmed, holding, "[s]ince the pending murder trial against [the victim] involved a shooting where gang affiliation would be incriminating, forcing [the victim] to testify would have provided evidence for the prosecutor in the pending murder charge. Therefore, the victim had a colorable fifth amendment privilege claim." *Medrano*, 271 Ill. App. 3d at 102.

■ McNeal should have been allowed to refuse to answer questions which might yield incriminating answers, as was the victim in *Medrano*, because he showed he had "reasonable cause to apprehend danger" from certain direct answers based on a prospect of penal liability that was "real and substantial," and not merely speculative. *Hoffman*, 341 U.S. at 486, 95 L. Ed. at 1124, 71 S. Ct. at 818; *Zicarelli v. New Jersey State Comm'n of Investigation*, 406 U.S. 472, 478, 32 L. Ed. 2d 234, 240, 92 S. Ct. 1670, 1675 (1972). Indeed, McNeal's lawyer represented that both Brown's and McNeal's alleged murders were gang related and that any testimony by McNeal about his gang membership, activities, or motivations could be used against McNeal in the murder case against him. The State speciously argued, in response, that it had "independent evidence" of McNeal's gang affiliation and activities and therefore McNeal should be forced to testify about those topics. We find that argument unfounded in law or logic. Simply because the prosecution has "independent" inculpating evidence against a defendant in no way means that defendant can be forced to give self-incriminating testimony. Furthermore, testimony given by McNeal placing him in the area where the crimes with which both he and Brown were charged occurred could have proven incriminating evidence in McNeal's subsequent trial.

And, importantly, the government failed to offer McNeal immunity. See 725 ILCS 5/106—1 (West 1996) (setting forth the government's ability to compel testimony from a "material witness" by immunizing him "from all liability to be prosecuted or punished on account of any testimony or other evidence he may be required to produce"). It could have conferred immunity on McNeal and, thereafter, attempted to obtain the evidence it sought. If McNeal balked after being granted immunity, he could have been punished for contempt, but not before.

As we stated earlier, a witness may be denied his fifth amendment privilege only when it is " 'perfectly clear, from a careful consideration of all the circumstances in the case,' " that the answers sought " 'cannot possibly have [a] tendency to incriminate [the witness].' " *Cooper*, 202 Ill. App. 3d at 342, quoting *Hoffman*, 341 U.S. at 488, 95 L. Ed. at 1125, 71 S. Ct. at 819. Because we cannot say it was perfectly clear that McNeal could not possibly have incriminated himself if, as the judge ordered, he answered "any questions propounded to [him] consistent with this case by the State's attorney," we reverse the judge's ruling denying McNeal the right to invoke his fifth amendment privilege.

For all of these reasons, we reverse the finding of contempt and vacate the sentence imposed upon McNeal.

Reversed and vacated.

CAHILL, P.J., and BURKE, J., concur.